JULIA C. NAST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JEROME NAST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10080, 10081.　Promulgated July 31, 1946.

*Wesley E. Seale, Esq.*, for the petitioners.
*Donald Abbey, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: In their income tax returns for 1943 the petitioners claimed the benefits of section 107 (a) of the Internal Revenue Code[2] with respect to the $1,946 received on September 4, 1943, by Jerome Nast, a family physician, as payment in full for services performed for one family to that date.

The petitioners contend that the "period" involved began April 22, 1939, and ended September 4, 1943, a period of more than 36 months; that the payment of $1,946 made September 4, 1943, covered services for the entire period and that the payments on account made prior to September 4, 1943, were for prior periods and should not be taken into account in determining whether the amount received on that date should be ratably allocated over the period in accordance with section 107 (a) of the Internal Revenue Code.

The respondent contends that the "period" began July 1, 1934, and that the charges accumulated from that date to September 4, 1943,

[2] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

(a) PERSONAL SERVICES.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

amounted to $3,096. Therefore, the payment of $1,946 received on September 4, 1943, represented less than 80 per cent of the total compensation received during the period and section 107 (a) is not applicable. We agree with this contention. The period in question did not represent accumulated earnings over a long illness which terminated in 1943, but a running account beginning in 1924 and payments on account covering the period, so far as the record here shows, from July 1, 1934, to September 4, 1943.

As we understand the statute, it is the total compensation "from the beginning to the completion" of the services which must be taken into account in determining whether at least 80 per cent thereof is received or accrued in one taxable year. The basic period, therefore, is the entire period involved and it is obvious that payments on account during the period must be considered a part of the total compensation for the services performed.

In order for the petitioners to be entitled to the relief provisions of section 107 (a) the payment sought to be apportioned must be at least 80 per cent of the total compensation received during the basic period. The total compensation during that period was $3,096 and the amount received in 1943 was $1,946. Since the latter amount is less than 80 per cent of the total compensation for the services covering the period, the petitioner is not entitled to the benefit of section 107 (a) in computing his net income for the year 1943.

It is, in fact, doubtful whether the statutory language "from the beginning to the completion of such services" was intended to cover a portion of a running account where identical services were rendered both before and after the period completed by such portion. We have not found nor have we been referred to any cases so holding. The cases examined by us have all involved services having a definite beginning and completion. *Harry L. Additon*, 3 T. C. 427; *Harry Civiletti*, 3 T. C. 1274; affd., 152 Fed. (2d) 332; *Paul H. Smart*, 4 T. C. 846; affd., 152 Fed. (2d) 333. See also Finance Committee Report accompanying the Revenue Act of 1942, section 140.

So far as the record shows, nothing happened on April 22, 1939, unless it was the billing of services rendered to that date. To permit an ordinary running account to build up over a period of time and then require payment, which could be allocated for tax purposes over prior years, permits manipulation of income by a taxpayer to avoid high tax rates and to take advantage of more favorable rates. If a taxpayer having a running account with a customer or a client might, by rendering a bill of the amount due, "complete" his services within the meaning of section 107 (a), he would be able to take advantage of the relief provision of the statute and at the same time include the compensation in income in whatever year it best suited his purpose

or it was to his advantage. This is particularly true in cases like the one before us, where the client is able to pay and could have paid at any time payment was required. In our judgment the statute does not permit that construction.

*Decision will be entered for the respondent.*

