## HEATH v. EARLY et al.

## MAUPIN v. SAME.

### Civil Actions Nos. 673, 692.

District Court, E. D. Virginia,
Norfolk Division.

March 1, 1948.

William L. Parker, of Norfolk, Va., for plaintiffs.

George R. Humrickhouse, U. S. Atty., of Richmond, Va., Theron L. Caudle, Asst. Atty. Gen., and Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen., for defendants.

BARKSDALE, District Judge.

The two above captioned actions were instituted by the plaintiffs against N. B. Early, Jr., Collector of Internal Revenue for the District of Virginia, and after the death of the defendant Early, Collector, who died pending the litigation, his personal representatives were substituted as parties defendant. The two actions are based upon identical facts and present the same legal questions, and therefore they will be considered together herein.

As the actions are before me upon motions for summary judgment made on behalf of both plaintiffs and defendants, I am not required by Federal Rules of Civil Procedure, Rule 52, 28 U.S.C.A. following section 723c, to file findings of fact and conclusions of law. Moreover, inasmuch

as these actions are against the Collector, and not against the United States, it would not seem that 28 U.S.C.A. § 764 requires me to file a written opinion. Nevertheless, I will briefly state the essential facts, and give the reasons for my conclusion, which will be in the nature of an opinion.

## The Facts.

It appears that in October 1932 James E. Heath, plaintiff's decedent in No. 673, and William G. Maupin, plaintiff in No. 692, then practicing attorneys in the City of Norfolk, were employed by a group of stockholders of the First National Bank of Portsmouth, to assert on their behalf certain claims against the American National Bank of Portsmouth alleged to arise from wrongful conduct by the American National Bank in the liquidation of the assets of the First National Bank. Heath and Maupin entered into written fee contracts with the stockholders who employed them. These contracts provided for a small retainer, and a larger fee contingent upon success. In January 1933, said Heath and Maupin instituted on behalf of the stockholders of the First National Bank who had employed them, and also on behalf of all other stockholders similarly situated who might come into the suit and contribute to the costs, a suit against the American National Bank in the Hustings Court of the City of Portsmouth, which, after tedious and protracted litigation involving two appeals to the Supreme Court of Appeals of Virginia, Ames v. American Nat. Bank, 163 Va. 1, 176 S.E. 204; American Nat. Bank v. Ames, 169 Va. 711, 194 S.E. 784, resulted in the recovery of a large sum of money for the benefit of all the stockholders of the First National Bank. Upon the conclusion of the litigation, the First National Bank stockholders who had employed said Heath and Maupin, paid them in full the contingent fees provided in their contracts. None of this compensation is included in the items of taxable income here in controversy. During the litigation, certain other stockholders were represented by counsel of their own choosing. However, stockholders holding some 1,536 shares of stock of the First National Bank were not represented by counsel, although as a result of the litigation they were entitled to share equally with all other stockholders in the benefits thereof. Said Heath and Maupin thereupon petitioned the Hastings Court of the City of Portsmouth for an allowance to them of counsel fees against such stockholders of the First National Bank as were not represented by counsel, the same to be charged against the share of the fund to which each of such stockholders was entitled. After reference to a commissioner, the court allowed a substantial fee to the said Heath and Maupin, to be paid by such stockholders, in proportion to their stock holdings, out of the fund on deposit in the registry of the court. This fee was paid in November 1939 to said Heath and Maupin, and equally divided between them. Altogether, Heath and Maupin each received the following amounts as fees:

(1) In 1932 and 1933, by way of retainer from stockholders of the First National Bank who employed Heath and Maupin, an aggregate of ............... $ 3,182.50

(2) In 1938, upon completion of their services, Heath and Maupin received from the stockholders who had employed them, as contingent fee, as provided in their employment contract, an aggregate of ........... 22,723.30

(3) In 1939, after completion of their services, Heath and Maupin received, by order of the Hustings Court, from stockholders of the First National Bank who were not represented by counsel, an aggregate of.. 42,645.00

Total received from all sources $68,550.80

From the above, it will be seen that the compensation received by Heath and Maupin in the year 1939 did not constitute as much as 95% of the aggregate compensation received by them in the years 1938 and 1939. It also appears that the aggregate compensation received by them in 1938 and 1939, after completion of their

services, constitutes more than 95% of the entire compensation collected by them.

Both said Heath and Maupin duly filed their income tax returns for the calendar year 1939, and pursuant to their conception of the provisions of Section 107 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 107, allotted their shares of this fee, in equal amounts, over the years 1932 to 1939, inclusive, and paid the tax assessed against them on this basis. In 1942, the Collector refused to permit the application of Section 107 to this fee, and required both taxpayers to pay an additional income tax for the year 1939, considering the said fee to have been, in its entirety, a part of 1939 income. Claims for refund, duly filed in each case, were denied, and these actions followed.

### The Law.

In 1939, 53 Stat. 878, § 220, the Internal Revenue Code was amended by inserting after Section 106 the following new sections:

"Sec. 107. Compensation for services rendered for a period of five years or more

"In the case of compensation (a) received, for personal services rendered by an individual in his individual capacity, or as a member of a partnership, and covering a period of five calendar years or more from the beginning to the completion of such services, (b) paid (or not less than 95 per centum of which is paid) only on completion of such services, and (c) required to be included in gross income of such individual for any taxable year beginning after December 31, 1938, the tax attributable to such compensation shall not be greater than the aggregate of the taxes attributable to such compensation had it been received in equal portions in each of the years included in such period.

"(b) The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1938." 26 U.S.C.A. Int.Rev.Acts, page 1185.

This section has since been amended, but for the tax year here in question its provisions were as quoted above. Treasury Department Regulations 103, Sec. 19. 107—1, is also pertinent, and is as follows:

"Section 107 is applicable only where at least 95% of the total compensation for such services is paid on or after their completion, and is received in a taxable year beginning after December 31, 1938."

The plaintiffs contend that Section 107 is plainly applicable to the situation here presented. The defendants, however, contend that the taxpayers were not entitled to the benefit of Section 107 for the reason that the compensation collected by the taxpayers in 1938 from their stockholder clients who had employed them, and the compensation collected by taxpayers in 1939 from the stockholders unrepresented by counsel, by order of court, must be considered together as the "compensation" referred to in Section 107, and inasmuch as less than 95% thereof was collected in 1939, then Section 107 was not applicable. I understand the defendants to contend further, that even though the compensation collected in 1938 and 1939 was collected "on completion of such services" and constituted 95% or more of the total compensation, the plaintiffs still cannot recover because of the Treasury Regulation above quoted to the effect that Section 107 is applicable only where at least 95% of the total compensation "is received in a taxable year beginning after December 31, 1938," that is, in a single taxable year after 1938. To sustain his contentions, counsel for the defendants has cited the following cases, although, admittedly, none of them is determinative of the precise question here presented: Howard v. First National Bank, 2 Va. Dec. 513, 27 S.E. 492, Carbon Steel Co. v. Slayback, 4 Cir., 31 F.2d 702, Lindstrom v. Commissioner, 9 Cir., 149 F.2d 344, Civiletti v. Commissioner, 2 Cir., 152 F.2d 332, Smart v. Commissioner, 2 Cir., 152 F.2d 333, Nast v. Commissioner, 7 T. C. 432, and Spears v. Commissioner, 7 T. C. 1271.

■ I am of the opinion that neither one of the defendants' contentions is sound. As to defendants' first contention, it is quite true that the taxpayers performed the same services in earning the compensation paid to them by their clients who had employed them, and in earning the compensation allowed to them by the court out of the shares of the stockhold-

ers unrepresented by counsel. However, it seems to me that from a common sense standpoint, the two fees were entirely separate and distinct. The fees paid to the taxpayers by their own clients were paid by virtue of their fee contracts, and their payment, and the amount thereof, depended entirely upon contractual relationships. On the other hand, the fees allowed the taxpayers out of the benefits accruing to stockholders whom they did not represent, depended on legal principles and the establishment of the liability of the unrepresented stockholders for these fees, and the amount thereof depended upon the determination of the court. The two fees came from quite different classes of stockholders: One class, clients; the other class, not clients. It therefore seems to me that the 1939 compensation should be treated separately from the 1938 compensation, and if so considered, the provisions of Section 107 are clearly applicable.

Since the compensation collected by taxpayers in 1938, and the compensation collected by them in 1939, aggregate more than 95% of the total compensation collected by them, then it seems to me clear that defendants' other contention must also fail. As to this contention, defendants rely entirely upon the above quoted Treasury Regulation to the effect that at least 95% of the total compensation must have been received in one taxable year beginning after 1938. I find nothing in the language of Section 107 to justify this regulation. To my mind, this Regulation is not in fact a construction or a clarification of Section 107, but constitutes an effort on the part of the Treasury Department to add restrictions to Section 107 which are not included in the statute. This conclusion, to me, seems inescapable, and besides, it was clearly so held by the Circuit Court of Appeals for the Sixth Circuit in a very careful and well reasoned opinion by Judge Martin in the case of Slough v. Commissioner, 6 Cir., 147 F.2d 836.

It follows that it is my conclusion to grant plaintiffs' motion for summary judgment in both cases, and counsel will submit orders accordingly.