HARRY BOVERMAN AND FLORA BOVERMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12003.   Promulgated March 19, 1948.

*Maurice Austin, Esq.*, for the petitioner.
*J. Richard Riggles, Jr., Esq.*, for the respondent.

480

OPINION.

LeMire, *Judge*: Our first question is whether in computing the petitioner's income tax liability for 1942 a portion of the commissions ·which he received in that year on the insurance policies on the lives of the Cohen brothers may be allocated to prior years, under section 107, Internal Revenue Code. Section 107 provides, in material part, as follows:

(a) PERSONAL SERVICES.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

The respondent contends that section 107 is inapplicable, on the facts in this case. We agree with the respondent in this contention. The act specifies that for the income to be reallocable there must have been received in one taxable year at least 80 per cent of the taxpayer's total compensation for such personal services. The petitioner's total compensation in commissions from the Cohen policies alone, over the years 1942 to 1945, inclusive, was $16,065.66. Of that amount, $10,638.28

was received in 1942 and the balance, consisting of renewal commissions, in 1943, 1944, and 1945. Thus, the amount received in 1942 was not 80 per cent of petitioner's total income from writing those policies. The petitioner argues that for the purpose of section 107 a distinction must be made between the "acquisition commissions," the assistant manager's "overriding commissions," and the "renewal commissions." In other words, he would treat the acquisition commissions only as compensation for the personal services of writing the policies and would separate that amount from all other income received from Metropolitan. That, we think, is contrary to the intendment of the statute. In several recent cases this Court has denied taxpayers the right to split up in this manner their income from a single source, or employment contract. See *Harry Civiletti*, 3 T. C. 1274; affd., 152 Fed. (2d) 332; *Paul H. Smart*, 4 T. C. 846; affd., 152 Fed. (2d) 333; *Julia C. Nast*, 7 T. C. 432; and *J. Mackay Spears*, 7 T. C. 1271; affirmed per curiam, 164 Fed. (2d) 486. In the last cited case, where the facts were much like the instant case, it was held that the total compensation received by the taxpayer for engineering services performed by him in connection with a series of construction projects for a single employer under a single employment contract must be taken into account in determining whether the taxpayer was entitled to the benefit of section 107. Here, we think, the petitioner's entire earnings from his employment contract with the Metropolitan, including salary and commissions on all policies of insurance written by him, must be treated as compensation for personal services for the purpose of section 107.

This brings us to the question of expense deductions. For both 1942 and 1943 the petitioner claimed large deductions for sundry expenses, such as carfare, lunches, telephone calls, gifts to insurance prospects, and prizes to the agents under his supervision. The respondent has disallowed all but a small portion of the amounts claimed in each of the years 1942 and 1943.

In our findings of fact we have set out in considerable detail the character of the expenditures and the manner in which the petitioner kept his record of them. Some of the items claimed appear to be more in the nature of personal expenditures than ordinary and necessary business expenses. Substantial amounts for liquor and other gifts to insurance prospects and prizes to agents are listed in petitioner's expense account, although petitioner's employment contract with Metropolitan expressly forbade such gifts and prizes. Those expenditures may have aided the petitioner in writing insurance or increased the amount of his "overriding commissions," as the petitioner contends, but, since they were forbidden by his employment contract, we can not say that they were ordinary and necessary expenses incident to the performance of that contract.

Also, the evidence gives rise to serious uncertainties as to the accuracy of petitioner's so-called expense account. The petitioner testified about keeping this account as follows:

Q. What was the nature of this record?
A. I would mark down on my card the expenses that I had for the day, and then I would enter it in my book.
Q. We will come to the book in a moment. How long on the average would you accumulate these daily slips before entering them somewhere else?
A. Sometimes a week, sometimes two weeks, sometimes three weeks.

The items appearing in the account as cost of taxicab fares, lunches, and telephone calls are all in round figures of dollar units. On being asked to explain this the petitioner testified:

A. Well, I usually knew how much money I started out with in the morning, and when I came home at night I always looked to see how much I had, and then tried to break up the difference.
Q. And in doing that did you take into account any personal expenditures that you might have had?
A. Yes.
Q. Did you include any of those in Petitioner's Exhibit No. 12?
A. No.
Q. Is it a fact that with respect to the carfares, cabs and phone calls, you used the nearest approximate round amount?
A. That's right.

Obviously, petitioner kept no actual or accurate account of his business expenses, but compiled a so-called expense account based on mere conjecture or speculation.

Notwithstanding the nondeductible character of some of the items claimed, however, and the uncertainty of the proof as to some of the others, we are convinced from the evidence, as a whole, that the petitioner did incur expenses of a deductible character in excess of what the respondent has allowed, and we must therefore make such allowance as the evidence justifies. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. Accordingly, we have found, as set out above, that the petitioner incurred deductible expenses of $1,000 in 1942 and $1,200 in 1943.

The parties are in agreement as to the amount of the expenditures claimed for medical expenses, so that there remains only the matter of applying the statutory percentage allowable therefor. Proper adjustment for that item will be made under Rule 50 computation.

*Decision will be entered under Rule 50.*