ESTATE OF MARION B. PIERCE, DECEASED, ASBURY PARK NATIONAL
BANK AND TRUST COMPANY, ADMINISTRATOR, PETITIONER, *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34006.    Filed April 29, 1955.

*James D. Carton, Jr., Esq.*, for the petitioner.
*Norman A. Peil, Jr., Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* In order to obtain the benefit of section 107 (a) of the Internal Revenue Code of 1939, as amended, the petitioner must show that the sum of $20,000 received by Pierce in 1945 represented "at least 80 per centum of the *total compensation* for personal services covering a period of thirty-six calendar months or more (*from the beginning to the completion of such services*) * * *." (Italics supplied.) Neither party advances a contention which puts in question the meaning of the provisions of section 107 (a). The questions to be decided, therefore, are fact questions, and the dispute between the parties involves disagreement about the facts to be found from all of the evidence.

Whether or not Pierce was entitled to receive application of the provisions of section 107 (a) in computing tax upon the sum of $20,000 which he received in 1945 depends upon the facts relating to the nature of the services rendered and the period of time which marks the beginning and the completion of services. Under the broad issue there are two questions.

Pierce was employed to act as attorney for M. P. R. in matters relating to reorganization proceedings under the Bankruptcy Act. He was also employed as the general counsel of M. P. R. The first question to be decided is whether the work done by Pierce as general counsel of M. P. R. was separate, distinct, and apart from his duties as attorney for M. P. R. in the reorganization proceedings.

In his petition for compensation for services rendered, dated November 22, 1944, Pierce made a separate request for compensation for services rendered as M. P. R.'s general counsel, and the I. C. C., under its report and order of July 2, 1946, allowed Pierce $3,800 for his services as general counsel. It is very clear that in its consideration of Pierce's petition for compensation for services as general counsel, the I. C. C. concluded that such services were distinct and separate from Pierce's services in reorganization proceedings matters. The I. C. C.

regarded Pierce's petition as presenting a question of whether his fee for his services as general counsel could be paid out of the debtor's estate as could his fee for services as attorney for the debtor (M. P. R.) in reorganization. If Pierce's services had been general, comprising both functions, no question would have existed. The I. C. C. took the view that Pierce acted in two distinct capacities. At first, the I. C. C. considered the cost of Pierce's services as general counsel one which was outside of the classes of expenses which could be paid by the trustee of M. P. R., a debtor, and did not allow Pierce anything for such services. It was only upon further hearing and a determination by the I. C. C. that there was some precedent for allowing payment out of the debtor's estate of compensation for such services that the I. C. C. allowed Pierce $3,800 in its supplemental report of July 2, 1946.

Furthermore, the I. C. C., in its supplemental report, made findings as to the nature of the work done by Pierce as general counsel. Briefly, his tasks related to the maintenance of the corporate entity, or organization, of M. P. R. during the period of its reorganization. The evidence shows that the duties of Pierce as general counsel were entirely different and separate from his duties as attorney representing the debtor in the reorganization proceedings. Such separate and distinct duties could have been performed, it appears, by another lawyer. They certainly required additional time and effort. The I. C. C. treated the allowance of compensation for services rendered as general counsel as separate and distinct from the allowance for compensation for services as attorney in the reorganization proceedings. Upon consideration of all of the evidence, we take the same view, and hold that the services of Pierce as general counsel were sufficiently distinct and separate from his other services as attorney in the bankruptcy proceedings to regard them separately for the purpose of section 107 (a). See *E. A. Terrell*, 14 T. C. 572; *Leon R. Jillson*, 22 T. C. 1101, Issue 2. The situation under this question is like that in the case of *Leon R. Jillson, supra* (Issue 2), where (in connection with the Cochran estate) it was considered immaterial that Jillson, who rendered services as attorney to trustees, was also a trustee, because there was sufficient distinction between the services rendered in each capacity "so that the legal services can be considered as entirely severable."

Our holding under the first question clears the way for consideration of the second question.[1]

The second question is whether the sum of $20,000 which was awarded to Pierce by the District Court and paid to him in 1945 can

---

[1] If it were held that Pierce's services as general counsel were not severable from his services as attorney in the reorganization proceedings, it would be proper to lump together all that was awarded to him in payment for services under his petition of November 22, 1944. Of such total, $28,800, the sum of $20,000 received in 1945 would be less than 80 per cent, and we would not reach the second question.

be taxed in accordance with the provisions of section 107 (a) of the 1939 code,[2] as amended by section 139 of the Revenue Act of 1942.

The pertinent facts are these: Pierce was appointed by the District Court in July 1941, at the request of M. P. R., to represent it as an attorney in the reorganization proceedings which were pending in the court and before the I. C. C. He represented the railroad in connection with the I. C. C. hearings on a new and second plan for reorganization, the first plan, the 1940 plan, having failed to receive final approval. After protracted hearings by the I. C. C., a second plan, the Commission's plan, or the 1944 plan, or the compromise plan, as it is variously called, was approved by the I. C. C. in the latter part of 1944 and was certified by the I. C. C. to the District Court which then set a date for the presentation of objections to the court. Pierce rendered services in connection with the second plan over a period of more than 36 months. The District Court, after the plan approved by the I. C. C. had been certified to the court, issued its order for the filing of petitions, by all persons having claims, for fees and compensation. Pierce duly filed his petition, and the court in 1945 awarded him, on the basis of the maximum allowance fixed by the I. C. C., $20,000 for his services in connection with the 1944 plan. The court in 1946 increased the award to $25,000, on the basis of further allowance by the I. C. C., and Pierce was paid the additional $5,000 in 1946. Pierce was paid $20,000 in 1945.

It at once is observed that the sum of $20,000, received by Pierce in 1945, the taxable year, is 80 per cent of $25,000, the total sum which the court awarded Pierce upon the petition for compensation which he filed on November 22, 1944, pursuant to the court's order; and that the services, compensation for which he petitioned, covered a period of 36 months and more, i. e., from July 1941 to October 1944. Thus, the requirements of section 107 (a), as amended, are met unless there was not "completion" of the services for which $25,000 was awarded and paid, of which $20,000 was received in one taxable year.

The narrow question to be decided is whether the court's award of $25,000 was for completed services.

The petitioner contends that the approval by the I. C. C. in 1944 of a plan for reorganization, the 1944 plan, and the court's 1944 order to all concerned to file petitions for compensation for services, marked the completion of services of Pierce, and that the award of $25,000

---

[2] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

(a) PERSONAL SERVICES.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

was the total compensation for Pierce's services in connection with that plan.

The respondent, on the other hand, argues that the matter is not that simple because Pierce continued to render services to M. P. R. as its attorney in the long reorganization proceedings and in 1951 was paid $35,000. He contends that Pierce rendered continuous services, homogeneous in nature, which were brought to completion only by Pierce's death which occurred before the reorganization proceedings came to an end. He contends that the approval of a plan for reorganization by the I. C. C., which is the action which brought forth the court's order to file petitions for fees and costs, should not be regarded as marking the completion and separation of services.

If respondent's view is correct, Pierce did not receive in one taxable year, namely, 1945, 80 per cent of the total compensation for services, "from the beginning to the completion of such services," because, under such view, the total compensation for all of Pierce's services was $60,000, 80 per cent of which is $48,000.

Upon consideration of all of the evidence and of the nature of the procedure followed under section 77 of the Bankruptcy Act, we conclude that the petitioner's contention is essentially correct, and that respondent errs in treating the performances of Pierce as inseparable and indivisible, and as completely homogeneous and continuous. In the first place, as we understand the procedures which were followed in order to achieve a reorganization of M. P. R. and the other railroads, the objective was to bring to final adoption and approval a single plan of reorganization. But the record before us shows that at least three different and distinct plans were successively approved by the I. C. C. and the District Court, none of which attained final approval up to the time Pierce died. The 1940 plan failed to receive final approval. The 1944 plan failed to receive final approval. The 1949 plan had been approved by the District Court before Pierce died, but as of that date, even it had not reached the point of finality. Each of these plans emerged out of a proceeding before the I. C. C. Each plan and each proceeding was separate and distinct from the next plan and the next proceeding, as we understand the general operation. The 1940 plan failed to go through to finality, and the 1944 plan also failed. When a plan failed, such as the 1944 plan, another proceeding started in the I. C. C. out of which another plan emerged. One plan might be the final plan, but whether it would be or would not be, could not be known at the time I. C. C. approved a plan and certified it to the District Court.

In the second place, the obtaining of compensation for services and costs by anyone working on a plan was wholly controlled by the District Court which acted pursuant to the provisions of section 77

(c) (12) of the Bankruptcy Act, as amended, and the applicable rules of the General Orders in Bankruptcy of the Supreme Court. Such fees and costs are paid out of the debtor's estate; they can be paid only upon I. C. C. recommendations fixing maximum allowances, and orders of the District Court; and petitions for fees and costs can be filed by claimants only at such times as the District Court fixes. It is our understanding, that if a person having a claim for fees and costs fails to file his petition therefor at the time fixed by the court, he loses his opportunity to get compensation for the services to which the court's order relates. Thus, Pierce could not make an election to file a petition for fees at any time which to him might be convenient. He was obliged to file his petition at the time prescribed by the court.

More specifically, we understand the following to be the situation: The District Court's order of October 31, 1944, was an order which marked the completion of the preparation of a plan for reorganization, and the court determined that all proper expenses in connection with the preparation of the plan, including all proper fees and all proper costs, should then be paid out of the estate of the debtor, or debtors. Not only Pierce, but all others, filed their petitions for compensation for services and costs in connection with the plan then before the court. As is stated in the Findings of Fact, Pierce asked for more in his petition, dated November 22, 1944, than the I. C. C. allowed, and the court in its order of September 21, 1945, making the various awards on the various petitions, reserved jurisdiction to make further allowances to Pierce upon his petition of November 22, 1944, if there was any further hearing by the I. C. C. on the petition; there was; and an additional $5,000 was allowed and awarded upon Pierce's petition of November 22, 1944.

We understand, further, that when the 1944 plan for reorganization failed to reach finality, the I. C. C. then took up another plan at the end of 1947, or the beginning of 1948. It held hearings on and approved another plan, the 1949 plan. The District Court's order issued on January 13, 1950, to all concerned, to file petitions for fees and other compensation was an order to file petitions for compensation in connection with the preparation and completion of the 1949 plan, and it marked the completion of another plan for reorganization. The court thereupon determined what properly should be paid by the debtors' estates in connection with the preparation of the 1949 plan. Pierce, and all others concerned, then filed petitions for compensation for services in connection therewith. Pierce filed his petition on March 17, 1950, for compensation for his services and costs in connection with the 1949 plan.

In this situation, we conclude that the District Court based its orders of October 31, 1944, and January 13, 1950 (to file petitions), and its

respective awards following those orders, upon a separation and divisibility of the services of all concerned, including Pierce, into one unit of services rendered in connection with the preparation and completion of the 1944 plan, which was approved by the I. C. C. on October 1, 1944, and into another unit of services rendered in connection with the preparation and completion of another plan, the 1949 plan, which was approved by the I. C. C. on December 29, 1949. That is to say, the court based its awards of compensation to Pierce, and others, in 1945, and in 1951, upon separate and completed services which were rendered in connection with two different plans for reorganization.[3] Therefore, in the case of Pierce, the awards to him in 1945 and 1946 for his services in connection with the 1944 plan should not "be brought into a hotchpot" with the award of the court to him in 1951 for his services in connection with the 1949 plan, and the prescribed percentage in section 107 (a), as amended, computed accordingly. Cf. *Smart* v. *Commissioner*, 152 F. 2d 333, 335, affirming 4 T. C. 846.

Reference has been made, *supra*, to section 77 (c) (12) of the Bankruptcy Act, and the respective orders of the District Court, dated October 31, 1944, and January 31, 1950, to interested parties to file petitions for fees. The court's order of October 31, 1944 (Exhibit 1), ordered the filing of petitions "for *final* allowance under section 77 (c) (12) of the Act in respect of services rendered and expenses incurred" (italics supplied), including reasonable attorneys' fees, in connection with the approved plan (the 1944 plan) certified by the I. C. C. and pending before the court (see Exhibit 2). The court's use of the words "final allowance" denotes the completion of all services rendered in connection with the approved 1944 plan, and supports the conclusion that Pierce's services in connection with the 1944 plan constituted "completed" services.

Our conclusion is, therefore, that the services of Pierce in connection with the 1944 plan were divisible from his later services in connection with the 1949 plan; that each service was separate and distinct; that each was a unit of service; and that each was completed when each one of two separate plans for reorganization was completed by the I. C. C. and certified to the District Court. Upon the evidence before us, it is held that the award of $25,000 to Pierce was for com-

---

[3] It has already been pointed out that the I. C. C. and the District Court approved three plans of reorganization prior to the death of Pierce in 1953. The first plan, called the 1940 plan, was approved by the I. C. C. on January 10, 1940, and by the District Court on July 12, 1941. The second plan, referred to as the 1944 plan, was approved by the I. C. C. on October 1, 1944, and by the District Court on January 22, 1946. The third plan, referred to as the 1949 plan, was approved by the I. C. C. on December 29, 1949, and by the District Court on October 3, 1950. What happened thereafter is not shown by the record in this case. We do not know whether the 1949 plan, or some later plan, became the final plan under which a reorganization was effected.

pleted services within the meaning of the condition in section 107 (a), as amended, which is encompassed by the words, "from the beginning to the completion of such services." Since Pierce received in the taxable year 1945, 80 per cent of the total compensation paid for completed services covering 36 calendar months, and more, the tax on the $20,000 which he received in 1945 can be computed, properly, under the provisions of section 107 (a). To deny here the application of section 107 (a), as amended, would defeat the purpose of that section.

This case is distinguishable on its facts from *Civiletti* v. *Commissioner*, 152 F. 2d 332; *George J. Hoffmann, Jr.*, 11 T. C. 1057; *Alfred J. Loew*, 17 T. C. 1347, affirmed per curiam 201 F. 2d 368; *Ralph E. Lum*, 12 T. C. 375; and *Julia J. Nast*, 7 T. C. 432. This case also is distinguishable from *Smart* v. *Commissioner, supra*, on the facts, but the rationale of the Court of Appeals in the *Smart* case is applicable and it has been applied here. In that respect, the *Smart* case is followed, and we do not depart here from the rule expressed in the *Smart, Hoffmann, Jr., Loew*, and other related cases. Cf., also, *W. Harold Warren*, 20 T. C. 378, 382.

In *Alfred J. Loew, supra*, it was found that Loew's services were continuous; that they were not divisible and separable. We pointed out that "the period of service is not to be broken up by the simple expedient of filing a petition for fees," and that with respect to Loew's services—

There was nothing in his employment requiring him to file petitions for allowances at any particular time. * * * he could do this [file petitions] at times to suit his own convenience.

In this case, the evidence is clear that Pierce could not file a petition with the District Court for allowance of compensation at a time to suit his own convenience. We have pointed out at some length above, that the District Court controlled and fixed the time for the filing of petitions for allowance of compensation, costs, and claims; that it acted pursuant to section 77 (c) (12) of the Bankruptcy Act and applicable regulations; that all claimants, including Pierce, had to file their respective petitions at the same time; that the court found the occasion for fixing the time for the filing of petitions for allowances (including a petition of Pierce) to be the completion, approval, and certification to the court of a plan for reorganization by the I. C. C.; and that the court issued its order to file petitions after the I. C. C. had completed and approved a plan. Pierce, then, could file a petition for allowance of compensation for his services *only by leave of the court, and at such time as the court determined*. He had no control over the fixing of the time when he could file a petition, or over the frequency with which he could file petitions. He could not resort to the filing of a petition for allowance of compensation as a device to

break up "services of a homogeneous nature and covering a continuous period" into segments, or units, or to mark the end of services. Cf. *Ralph E. Lum, supra;* and *Julia J. Nast, supra.*

The petitioner no longer contends that the provisions of section 275 (c) of the 1939 Code do not apply. The petitioner has stipulated that certain adjustments of the respondent are correct. Effect will be given to the stipulation in the Rule 50 recomputation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, concurs in the result.

KERN, VAN FOSSAN, TURNER, OPPER, TIETJENS, BRUCE, and PIERCE, *JJ.*, dissent.