CITIZENS FIDELITY BANK & TRUST CO., Executor of the Estate of John G. Heyburn, deceased, Martha R. Heyburn, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 3142.

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 26, 1957.

Henry R. Heyburn, Charles F. Wood, Peter, Heyburn & Marshall, Louisville, Ky., for plaintiffs.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for defendant.

BROOKS, District Judge.

The complaint was filed on April 30, 1956, by Citizens Fidelity Bank & Trust Company, executor of the Estate of John G. Heyburn, deceased, and Martha R. Heyburn, widow of the aforesaid John G. Heyburn, against the United States of America, and seeks to recover the sum of $1,261.78, erroneously paid to the United States for individual income tax on income for the calendar year 1952.

Many of the facts were stipulated by the parties on the day of the trial, October 25, 1956, and will be found in the record. The defendant, United States of America, introduced no testimony, and confined its evidence to cross-examination of the plaintiffs' witnesses.

The case was tried by the Court on October 25, 1956. From the evidence introduced at the trial, and from the afore-said Stipulation of Facts, the Court makes the following

Findings of Fact

1. The Heyburn Building Company, a Kentucky corporation, owns and operates a seventeen story office building at Fourth and Broadway in Louisville, Kentucky.

2. John G. Heyburn, the deceased husband of plaintiff, Martha R. Heyburn, was President of the Heyburn Building Company from May 8, 1939, until his death on August 14, 1952. At the time of his death, he was receiving a salary from the Building Company of $7,260 per year. The decedent owned 3,962 of the 14,326 outstanding shares of capital stock of the Company. A dividend of $3 per share was paid by the Building Company in 1951 and 1952. Mr. A. J. Stewart, Vice-President of the Citizens Fidelity Bank & Trust Company of Louisville, and a recognized expert on real estate management problems in Louisville, testified that Mr. Heyburn had consulted him on the several occasions that Mr. Heyburn's salary as President had been increased, and that he (Mr. Stewart) had advised him in each case that he thought the salary as increased was in line with that paid to other office building executives in Louisville, Kentucky, under similar circumstances. In May, 1939, Mr. Heyburn's salary had been $300 per month and was increased in March, 1947, to $500 per month, and in October, 1950, to $600 per month, the salary which he was receiving at his death. William Heyburn II, Secretary-Treasurer of the Heyburn Building Company, testified that the Company had, at no time, had any profit sharing, bonus, or pension plan in which any of the officers of the Company participated and that there was no fixed policy with respect to payment of any sums to the widows of deceased officers. This witness further testified that at the death of the first President, William Heyburn, in April, 1939, no payment had been made to his widow, and that at the death of Alexander Heyburn, Secretary-Treasurer of the Company, in July, 1944, the directors had

voted to pay an amount equal to seventeen months' salary to his widow.

3. Both John C. Endebrock, Jr., Manager of the Building Company, and the aforesaid William Heyburn II, Secretary-Treasurer of the Company, testified that John G. Heyburn was, in addition to the salary which he received as President, paid for the legal services which he, as a member of the law firm of Peter, Heyburn & Marshall, performed for the Company. The cash disbursements ledger, and voucher register, which were introduced as evidence, show that John G. Heyburn was paid his full salary through the date of his death on August 14, 1952.

4. The cash disbursements ledger, voucher register, and other financial records, introduced as evidence, show that the five payments of $605 each were made directly to the plaintiff, Martha R. Heyburn, in the months August through December, 1952, and that a separate ledger account headed "Payment to Widow of John G. Heyburn," numbered 898, was set up to handle these payments.

5. On September 5, 1952, the directors of the Company met and voluntarily passed two resolutions, the first being a resolution expressing the directors' high regard for John G. Heyburn, which resolution was immediately followed by one directing the payments here in question be made to the decedent's widow, plaintiff herein. Copies of the news accounts and editorials carried in the local newspapers in connection with Mr. Heyburn's death were attached to these Minutes. The resolution authorizing the payments here involved reads as follows:

"Resolved, that in recognition of the long and valued services of the late John G. Heyburn to this corporation, there be paid on or before December 31, 1952, to his widow, Mrs. Martha R. Heyburn, an amount equal to the gross salary which Mr. Heyburn would have earned in five months, said amount to be payable in five equal installments on the last day of August, September, October, November and December, 1952, and that a copy of this Resolution be sent to Mrs. John G. Heyburn and Mrs. William Heyburn."

In accordance with the resolution, a copy of the same was sent to the widow of John G. Heyburn, and to his mother, Mrs. William Heyburn, on September 9, 1952.

6. The taxpayer, Martha R. Heyburn, the Manager of the Heyburn Building Company, John C. Endebrock, Jr., and Secretary-Treasurer of the Company, William Heyburn II, all testified that Mrs. Heyburn is not now, and has never been an employee, director, officer, or majority stockholder of the Company, has never performed any services for the Company, and that the Company had not received any benefit from the payment to Mrs. Heyburn, and further that the Company was not indebted to her in any way.

7. In view of the fact that the payments in question were made directly to the taxpayer and not to her deceased husband's estate; that there was no obligation of any kind, nor company policy to make the payments; that the Company received no benefit and that Mr. Heyburn's widow performed no services; that the payments were not related in any way to any bonus, profit sharing plan, dividends, or pension plan; that the entire tenor of the pertinent resolution was one of sympathy; and that the decedent, John G. Heyburn, was fully compensated during his lifetime, the Court concludes and finds that the directors intended to and did pay a gratuity of $3,025 to the taxpayer, Martha R. Heyburn.

## Conclusions of Law

The question presented is whether the amount received in 1952 by Martha R. Heyburn, widow of the deceased president of The Heyburn Building Company, was compensation, in which case it is taxable as income, or whether it was a gift, in which case no tax is due.

Insofar as we have been able to discover, this question of the taxability of payments to widows of deceased corporate officers has not been originally considered by any of the United States District Courts, although there are numer-

ous decisions by the Tax Court of the United States, all favorable to the taxpayer.

■ The principal question that must be answered is this: What was the *intent* of the Board of Directors? Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 66, 82 L.Ed. 32, is a leading case in this field and places primary emphasis on the factor of intent. Moreover, the various cases decided by the Tax Court provide rules which are consistently used as guides in determining the intent of the donor, and whether a payment is a gift or compensation. These seven rules may be summarized as follows:

(1) Was the payment made directly to the widow? If so, a gift was intended, where as if made to the deceased officer's estate, compensation was intended.

(2) Was there a legal obligation to make the payment? If not, it is a gift.

(3) Did the donor company receive any benefit from, or the recipient perform any services for the payment? If not, it was a gift.

(4) What was the donor's motive? If it was generosity, good will, esteem or the like, the payment was a gift; if it was to compensate, then taxable income was received.

(5) Were payments related to dividends or profits? If too closely tied to these the payment may be income.

(6) Was the recipient an officer, director or majority stockholder of donor? If so, the payment may be income.

(7) Was the deceased officer properly compensated for services rendered during his lifetime? If so, the payment has the attributes of a gift.

In each of the cases summarized below, one or more of these questions was answered adversely to the taxpayer's contention that the payment was a gift; but in each case it was held that a gift was intended. In the present case, we find that the answer to each question conclusively shows that a gift was intended.

In the Bogardus case, supra, one company made payments to certain employees of a predecessor company in recognition of "valuable and loyal" services. In reversing the lower courts and holding the payments to be gifts, the Supreme Court emphasized four of the rules set out above; namely (1) that the recipients were not employees of the donor, (2) that there was no obligation involved, (3) that they had already been fully compensated, and (4) that the intent was not to make payment for any services but was, rather, an act of "spontaneous generosity." The court concluded its opinion with this rule: "A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient." The dissenting opinion is also favorable to taxpayer's contention for the minority of the Court would adopt this rule: "Has it (payment) been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt."

In Louise K. Aprill, 1949, 13 T.C. 707, payment to the widow was held to be a gift even though her husband owned a controlling interest in the company and she became president and a director less than a month after his death. The pertinent resolution there, as in this case, referred to the payment as being "in recognition of the services rendered." The Court emphasized that no services were performed in return for the particular payment involved.

Alice M. Macfarlane, 1952, 19 T.C. 9, involved the payment of salary and bonus to the decedent's widow. Significantly, the Commissioner of Internal Revenue *conceded* that the continued salary payment was not taxable, but contended that the company was legally obligated to pay the bonus. The court found there

was no legal obligation to make the payment and placed emphasis on the fact that the payment was made directly to the widow rather than to the estate.

By I. T. 4027, CB 1950–2, p. 9, promulgated September 12, 1950, the Commissioner ruled that irrespective of a plan, voluntary or involuntary, definite or indefinite, payments made by an employer to a deceased employee's widow, in *consideration of services rendered by the employee* are taxable to the widow. *The Tax Court made it clear that this I. T. can apply only in cases where payment was made in consideration for services rendered.* See Estate of Arthur W. Hellstrom, infra.

In Ruth Hahn, P–H Memo 54, 103 (1954), the directors voted to continue to pay a deceased employee's salary to his widow. Despite reference in the resolution to the payment as "compensation;" a showing that on two previous occasions a similar payment had been made to the widows of deceased officers of the corporation, the Court found the payment to be a gift. In doing so, the Court found that, (1) decedent had been fully compensated during his lifetime, (2) that payment was to the widow, not the estate, and (3) that the intent was to express sympathy and generosity. The Court held that deduction of the payments by the corporation was of no consequence.

Marie G. Haskell, P–H Memo 55.196 (1955) was a case where the directors passed a resolution for payment of ten months' salary to the widow of a deceased officer, and later continued such payments. Taxpayer and her daughter were two of the three directors, and, after the death of the taxpayer's husband, owned a controlling interest in the corporation. Despite this, the Court found the payments constituted a gift because: (1) no services were rendered by widow, (2) there was no obligation to pay, and (3) regular stock dividends were also paid by the corporation in substantial amounts. The Commissioner's

appeal in this case was dismissed by the Fourth Circuit Court of Appeals.

In Estate of Arthur W. Hellstrom, 1955, 24 T.C. 101, the pertinent resolution provided for monthly payments to widow until further notice in recognition of services rendered in conformity with company policy, but without obligation. The Commissioner relied heavily on I. T. 4027, supra. The Court, in holding that the payments were gifts, said it makes little difference how the donor formally expressed its motives, but that here it was basically decedent's past association with the corporation which motivated the payment which was none the less a gift. It also specifically said that it attached no significance to the deduction of the payment by the corporation.

Elizabeth Robinson Matthews, P–H Memo 56.046, decided February 29, 1956, is a recent case. Here a corporation paid salary and bonus to the widow of the deceased general manager. The bonus was $20,000, nearly twice his annual salary, and an identical bonus had been paid to the officers in the two previous years. The payment was charged to the regular officers' salaries account. The Court held the payments were gifts, because (1) there was no contract to pay, (2) no service or consideration was received in return, and (3) donee was neither an officer or employee of the donor company.

Defendant cited numerous cases in its closing argument, nearly all of which involved payments to a living employee and in which it was clear that valuable services had been rendered by the recipient to the payor. Moreover, in view of the consistent approach to this question taken by the Tax Court as exemplified by the preceding cases, and in view of the rules as to the distinction between gift and compensation set forth in the Bogardus case, supra, it is concluded that the payments to Martha R. Heyburn, the taxpayer, were gifts and are therefore not taxable as income.