FRANK STEPHEN RANZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65184. Filed October 17, 1958.

*Floyd Anderson, Esq.*, for the petitioner.

*John J. Larkin, Esq.*, for the respondent.

BRUCE, *Judge:* Respondent has determined deficiencies in petitioner's income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1952 | $114.00 |
| 1953 | 69.71 |
| 1954 | 3,571.58 |

At the hearing petitioner conceded certain issues with respect to respondent's disallowance of club initiation fees in the amounts of $375 and $120 claimed by petitioner as business expense deductions for the years 1952 and 1953. The sole issue for decision is whether the provisions of section 1301 of the Internal Revenue Code of 1954 are applicable to commissions in the amount of $35,299.69 received by petitioner in 1954.

### FINDINGS OF FACT.

Petitioner is a resident of Cincinnati, Ohio. The returns for the period here involved were filed with the director of internal revenue for the first district of Ohio.

During the taxable years, petitioner was a professional engineer and sales representative of machine tool manufacturers in an area covering Cincinnati, Dayton, Springfield, and Columbus, Ohio, and a part of the State of Kentucky. In March 1951, petitioner entered into an informal agreement with the Rehnberg-Jacobson Manufacturing Company (hereinafter referred to as Rehnberg), a manufacturer of machine tools, to sell equipment manufactured by Rehnberg. The terms of this agreement were set forth in the following letter addressed to petitioner, dated March 27, 1951, and signed by the president of the company:

I have your letter of March 24 and although, as you stated, the problem that now faces us is production and not sales, we are still willing to work with you. We have no representative in your district and if you could work in to be a good man for us, we can look forward past this rush period.

All our sales representatives work on a strict commission basis of ten per cent. Some act as dealers and others as agents. In this case you would act as an agent. The difference, as you know, is that an agent does not handle the account, the billing is direct from the factory to the customer, and we pay the agent his commission after the machine is paid for.

We have some quotations in at Ford Transmission. I covered this deal myself. These quotations should soon materialize in orders, and if you want

to, we will send you copies of the quotations. This would give you an "in" at the Ford plant, and we will pay you five per cent commission on these orders. Please direct your communications to Mr. J. R. Hoaglund, our sales manager.

Thereafter petitioner received the following letter from the sales manager at Rehnberg:

REHNBERG-JACOBSON MFG. CO.
2135 KISHWAUKEE STREET
ROCKFORD, ILLINOIS, *April 5, 1951*

Mr. FRANK S. RANZ,
    9617 KENWOOD ROAD,
        BLUE ASH, OHIO,
            (CINCINNATI 27)
Subject: Ford Motor Company
        Automatic Transmission Division
        Cincinnati, Ohio

DEAR SIR:

As requested in your letter dated April 2, we have prepared and attach copies of our proposals numbered 2575 and 2576, each covering a Needle Bearing Assembly Machine as quoted to the above company. May we suggest, when you are free to do so, that you pursue this matter and if you are successful in obtaining the business you will be allowed a 5% commission as suggested in our Mr. Rehnberg's letter of March 27.

Regarding your proposed visit to Rockford during the week of April 9, we will be glad to have you visit us and you have only to notify us of your exact arrival time a day or two in advance in order that we may make hotel reservation for you and otherwise anticipate your arrival.

We look forward to meeting you personally and remain
    Very truly yours,

REHNBERG-JACOBSON MFG. CO.
/s/  J. R. Hoaglund
J. R. HOAGLUND

Petitioner visited the offices and plant of Rehnberg at Rockford, Illinois, and was furnished copies of bulletins relating to various machines and equipment manufactured by it. In addition to copies of the two proposals which had previously been submitted by the president of Rehnberg to the Automatic Transmission Division of the Ford Motor Company, petitioner was furnished correspondence pertaining to this customer. Thereafter petitioner contacted representatives of the Ford company and engaged in extensive promotional activities and negotiations for the purpose of selling them machine tools of the Rehnberg company for use in manufacturing the automatic transmission assembly to be used in Ford and Mercury automobiles. He obtained blueprints of the assembly plan (petitioner's Exhibit 9) and submitted numerous proposals for machine tools in connection therewith. He consulted frequently with the Ford representatives concerning the proposals and requoted them several times. These activities continued through 1951 and 1952 and finally resulted in Rehnberg receiving 13

orders for machine tools from the Ford company in 1953. All of these orders were for the purchase of machine tools for use in the manufacture by Ford of its automatic transmission assembly. All of the orders resulted from petitioner's efforts and proposals which he had submitted and none was based on the quotations or proposals which the president of Rehnberg had submitted prior to petitioner's employment. These orders, the dates they were received by petitioner, and the amounts thereof are as follows:

| Order No. | Date received by petitioner | Amount | Order No. | Date received by petitioner | Amount |
|---|---|---|---|---|---|
| PE-12085 T | Apr. 22, 1953 | $9,425 | PE-6061 T | May 30, 1953 | $44,130 |
| PE-12086 T | Apr. 22, 1953 | 6,265 | PE-6057 T | May 30, 1953 | 44,495 |
| PE-11805 M | Apr. 22, 1953 | 6,265 | PE-6050 M | June 3, 1953 | 41,370 |
| PE-11806 | Apr. 22, 1953 | 9,586 | PE-20121 M | June 26, 1953 | 43,900 |
| PE-12177 T | Apr. 29, 1953 | 24,536 | PE-35512 M | July 13, 1953 | 6,435 |
| PE-6902 M | May 21, 1953 | 25,021 | | | |
| PE-12248 T | May 16, 1953 | 38,435 | | | 340,828 |
| PE-5983 M | May 27, 1953 | 40,965 | | | |

After they were placed, petitioner was required to and did service the above orders until the machines were shipped and placed in operation. Deliveries on the 13 orders mentioned above were made during the first 6 months of 1954 and petitioner continued to render services in connection therewith until about December 1954. His commissions were paid after the machines had been delivered and paid for by the Ford company. Petitioner received commissions based upon the above orders as follows:

| Date | Amount |
|---|---|
| May 1, 1954 | $3,870.23 |
| May 14, 1954 | 13,619.20 |
| June 11, 1954 | 8,637.83 |
| July 19, 1954 | 8,063.61 |
| Sept. 16, 1954 | 626.00 |
| Oct. 28, 1954 | 91.43 |
| Nov. 19, 1954 | 391.39 |
| Total | [1] 35,299.69 |

[1] This figure is in excess of 10 per cent of $340,828, the total amount of the 13 orders shown above and the record discloses no explanation for the discrepancy. Petitioner testified, however, that the entire $35,299.69 represented commissions received by him from the order relating to the Ford automatic transmission project and respondent, in his request for findings, apparently agrees.

During the period 1952 to 1954, petitioner also received small orders amounting from $5,000 to $8,000 from the Ford company for certain manufacturing equipment consisting of drill and tap units manufactured by the Rehnberg Company. These machines were not a part of the machine tools to be used in the manufacture of the Ford automatic transmission assembly. Other than those relating to the

automatic transmission tools, petitioner received commissions from Rehnberg in the years and amounts as follows:[1]

| Date | Amount |
|------|--------|
| 1952 | $1,254.47 |
| 1953 | 2,422.18 |

No part of these commissions was for equipment to be used in the manufacture of the Ford automatic transmission assembly.

By letter dated November 15, 1956, the sales manager of Rehnberg terminated petitioner's association with that company in the following language:

*November 15, 1956*

THE FRANK S. RANZ COMPANY,
   111 EAST FOURTH STREET,
      CINCINNATI 2, OHIO

GENTLEMEN:

In view of recent cancellations on jobs you have sold and other considerations, we are taking this opportunity to cancel the exclusive sales arrangement we have had with you since 1951.

We are willing to work with you on individual inquiries, and depending on developments, we may later offer a standard contract, similar to that we have with other representatives.

      Yours truly,

                       REHNBERG-JACOBSON MFG. CO.
                       /s/  Irving G. Jacobson

   IRVING G. JACOBSON,
   *Sales Manager*

In his tax return for 1954 petitioner reported the commission of $35,299.69 which he received for selling the automatic transmission machine tools to Ford but computed his tax thereon in accordance with the provisions of section 1301 of the Internal Revenue Code of 1954. Respondent determined that the provisions of section 1301 were not applicable to the $35,299.69 commission and computed petitioner's income tax liability as follows:

COMPUTATION OF TAXABLE INCOME YEAR ENDED DECEMBER 31, 1954

| | |
|---|---|
| Adjusted gross income disclosed by return | $1,807.85 |
| Additional income and unallowable deductions: | |
|   (a)  Commissions | 26,474.76 |
|   (b)  Business expense | 60.50 |
| Adjusted gross income adjusted | 28,343.11 |

---

[1] Petitioner's Exhibit 10 on which these amounts are shown also indicates that petitioner received commissions from Rehnberg during 1955 and 1956 in the amounts of $191.11 and $3,623, respectively. Such figures are not however, strictly speaking, in evidence since petitioner, after objection thereto by respondent on the ground of irrelevancy, withdrew his offer to that portion of the exhibit. They are mentioned here in the event it should become important to show that the compensation received by petitioner in 1954 represented more than 80 per cent of the total compensation received by him from the sale of Rehnberg tools over the *entire* period of his employment. Cf. *Ralph E. Lum,* 12 T. C. 375; *William J. Morrison, Jr.,* 12 T. C. 709; *Julia C. Nast,* 7 T. C. 432.

Less: Deductions allowable in computing taxable income:
- (c) Standard deduction_____ $1,000.00
- (d) Personal exemption_____ 600.00
  - $1,600.00

Taxable income_____ 26,743.11

COMPUTATION OF INCOME TAX YEAR ENDED DECEMBER 31, 1954

Taxable income_____ $26,743.11
Income tax computed under section 1 (a) of the Internal Revenue
Code of 1954_____ 11,200.73
Self-employment tax_____ 108.00

Income tax liability_____ 11,308.73
Income tax liability shown on original return, Acct. No.
PO 1006359_____ $260.39
Income tax assessed on Acct. No. 56-515189_____ 7,476.76
- 7,737.15

Deficiency_____ 3,571.58

### OPINION.

Section 1301 (a) of the Internal Revenue Code of 1954 [2] provides that if an individual (1) engages in an employment, (2) which covers a period of 36 months or more (from the beginning to the completion of such employment), and (3) the gross compensation from the employment received or accrued in the taxable year of the individual is not less than 80 per cent of the total compensation from such employment, then the tax attributable to any part of the compensation included in the gross income of the individual shall not be greater than the aggregate tax attributable to such part had it been included in the gross income of the individual ratably over that part of the period which precedes the date of receipt or accrual.

Petitioner contends that he is entitled to allocate over the period 1951 to 1954, inclusive, commissions totaling $35,299.69 which he received from the sale of machine tools to the Automatic Transmission Division of the Ford Motor Company, in accordance with the provisions of this section. Respondent argues, however, that the sales

---

[2] SEC. 1301. COMPENSATION FROM AN EMPLOYMENT.

(a) LIMITATION ON TAX.—If an individual or partnership—

(1) engages in an employment as defined in subsection (b).; and

(2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment) ; and

(3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment,

then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

involved did not result from services extending over a period of 36 months or more and further, that they resulted from a set of unrelated services which did not constitute "an employment" within the meaning of section 1301.

We find no merit in respondent's first contention. The evidence establishes that petitioner contacted representatives of the Ford company shortly after he entered into an informal contract with the Rehnberg-Jacobson Company in March or April of 1951 and carried on extensive promotional activities and negotiations with them continuously thereafter until the 13 orders involved were received, shipped, and paid for. The orders were received in 1953. However, petitioner was required to service the orders until the machines were shipped and placed in operation. He was not entitled to the commissions thereon until the machines were shipped and paid for by the Ford company. The commissions involved were received on various dates between May 1 and November 19, 1954, in each instance more than 36 months after his contract with Rehnberg was entered into. It has been held by this Court that time spent in unsuccessful efforts as well as in preliminary exploratory work may be included in the period required by the statute. *James D. Gordon*, 10 T. C. 772, affirmed per curiam 172 F. 2d 864; *Guy C. Myers*, 11 T. C. 447. See also S. Rept. No. 1622, *infra*.

The more difficult problem is whether the commissions involved represent compensation received from "an employment" within the meaning of section 1301. Section 1301 (b) defines the term "an employment" as "an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation therefor is obtained."

The term "an employment" was included in section 1301 for the purpose of clarifying the words "compensation for personal services" which were a part of section 107 (a) of the Internal Revenue Code of 1939. In commenting on the term "an employment," the Senate Committee on Finance stated:

The existing law refers simply to "compensation for personal services." The new term "an employment" is a more specific concept and, therefore, more accurately expresses the intended meaning. This aspect of the existing law has been a source of difficulty in determining the particular unit of personal services involved. In order to meet the 36-month requirement there is a tendency to combine various sets of services which in total extend over the required period. Likewise, there is a similar tendency to separate various sets of services in order to meet the requirement that at least 80 per cent of the total compensation for all of the services be received or accrued in 1 taxable year. If a taxpayer has already received a substantial payment prior to the taxable year, he may attempt to segregate the prior payment to a different

service rendered by him. In order to dispose of these difficulties, this section adopts the term "an employment." The general idea underlying the new term is that the compensation for which tax relief is provided under this section must relate to a particular project on which the taxpayer worked, such as a particular law case, and not to a set of unrelated services which the taxpayer may have performed for the same person.

The definition of "an employment" is contained in subsection (b) of this section. There, the term is defined to mean an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation for such services is received. This definition will preclude a separation of services relating to a particular project, merely because the taxpayer may have received compensation for such services from different sources. Whether the period over which services are performed includes conference and study time depends upon the circumstances of the case. In general, if the compensation received specifically includes conference and study time, such time is a part of the total period over which the services were performed. The total period of an employment includes, of course, portions of the period during which the efforts of a taxpayer were unsuccessful in effecting the particular result.

Senate Report No. 1622, 83rd Cong., 2d Sess.,<br>"Internal Revenue Code of 1954," pp. 445–446.

See also the report of the House Committee on Ways and Means, H. Rept. No. 1337, 83d Cong., 2d Sess., p. A289.

Petitioner argues that the sale of machine tools to the Ford company for use in manufacturing its automatic transmission assembly represented a "particular project" for which he was employed by Rehnberg. We cannot agree. An examination of the letters of March 27 and April 5, 1951, indicates quite clearly that petitioner was employed as a general sales representative to sell Rehnberg machine tools to any customers he might find in his district and that, except as to the two quotations which had been submitted by Rehnberg's president and which are not involved herein, the reference to the Automatic Transmission Division of the Ford Motor Company was no more than a lead to a potential customer. The fact that Ford used the tools on a particular project of its own did not convert petitioner's employment into an arrangement "to effect a particular result."

It remains to be determined whether the arrangements by which petitioner was to represent Rehnberg as a *general salesman* constitutes "an employment" within the meaning of section 1301. In our opinion it does not.

The statute with which we are dealing is one granting special tax relief and as such must be closely scrutinized. *Smart* v. *Commissioner*, 152 F. 2d 333, affirming 4 T. C. 846; *Slough* v. *Commissioner*,

147 F. 2d 836, reversing 3 T. C. 565. Referring to the original form in which section 107 of the 1939 Code was adopted and the several amendments thereto, the court, in *Smart* v. *Commissioner, supra,* at 335, observed:

From all this it appears that we have to deal with a statute which not only has been amended, but amended with a precision which, it seems to us, should forbid any assumptions that it is infused with a broad purpose, which we should ramify as the occasion may demand.

This would seem to be even more true in the instant case in view of the new term "an employment" which was used in section 1301 of the 1954 Code, and which the congressional committee stated "is a more specific concept and, therefore, more accurately expresses the intended meaning." Both the statute and the congressional reports emphasize the particular nature of the employment required in order for a taxpayer to be entitled to the benefits of section 1301. Section 1301 (b) defines the term "an employment" as an arrangement for the performance of personal services "to effect a particular result." The congressional reports state that the general idea underlying the new term "an employment" is that the compensation for which tax relief is provided must relate to "a particular project" on which the taxpayer worked, and not to a set of unrelated services which the taxpayer may have performed for the same person. See also respondent's Income Tax Regs. sec. 1.1301–2 (b).

Petitioner's employment by Rehnberg was not directed to any particular project. He was at liberty to sell Rehnberg machine tools to any customer he might find in his district. His only compensation was by way of commissions based on the amount of equipment sold. Also, although the machine tools involved were used by Ford on a particular project of its own, each of the 13 orders therefor were separate and distinct. None of the 13 depended for its effectiveness upon any of the other orders. So far as petitioner's employment was concerned, they represented the results of unrelated services.

Considering all the facts and circumstances we hold that the commissions involved do not represent compensation received from "an employment" within the meaning of section 1301, and consequently, that petitioner is not entitled to compute his income tax on the $35,299.69 received in 1954, in accordance with the method provided by section 1301 of the Internal Revenue Code of 1954.

Reviewed by the Court.

*Decision will be entered for respondent.*