Frank Stephen RANZ, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 13807.

United States Court of Appeals
Sixth Circuit.

Jan. 21, 1960.

Floyd Anderson, Cincinnati, Ohio (Anderson & Sulau, Cincinnati, Ohio, on the brief), for petitioner.

Louise Foster, Dept. of Justice, Washington, D. C. (Charles K. Rice, Lee A. Jackson, Harry Baum and Carter Bledsoe, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SHACKELFORD MILLER, Jr., and WEICK, Circuit Judges, and WILLIAM E. MILLER, District Judge.

WILLIAM E. MILLER, District Judge.

The Commissioner of Internal Revenue determined deficiencies in income tax of petitioner, Frank Stephen Ranz, for the years 1952, 1953, and 1954. The Tax Court affirmed the determination of the Commissioner, and the case

is before us on Petition for Review of the Tax Court's decision. The sole question for our consideration is whether the provisions of Section 1301 of the Internal Revenue Code of 1954 (26 U. S.C. (1952 ed.), Sec. 1301)[1] are applicable to commissions in the amount of $35,299.69 received by petitioner in 1954 while engaged as a sales agent for Rehnberg-Jacobson Manufacturing Company.

The commissions represented compensation paid to petitioner for selling to Ford Motor Company certain machine tools of the Rehnberg company for use in manufacturing automatic transmission assemblies to be installed in Ford and Mercury automobiles. In his tax return for 1954, petitioner reported the commissions of $35,299.69 but computed his tax thereon on the basis of Section 1301, including the commissions in his gross income ratably over the period beginning in 1951 and ending in 1954, during which he worked on the various Ford orders. It is conceded that petitioner in so computing his 1954 tax fully complied with the 36 months and 80 percent requirements of Section 1301, and the crucial issue is whether petitioner was engaged in "an employment" as defined in subsection (b):

"(b) Definition of an employment.—For purposes of this section, the term 'an employment' means an arrangement or series of arrangements for the performance of per-

sonal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation therefor is obtained."

We are of the opinion that the Tax Court correctly found and concluded that the petitioner's services as a sales agent of Rehnberg did not fall within this definition, and that petitioner was, therefore, not entitled to the benefit of Section 1301 so as to spread the commissions derived from the Ford orders over the period beginning in 1951 and ending in 1954. The opinion of the Tax Court,[2] in which we fully concur, is supported by findings of fact amply sustained by the evidence, and it is not necessary to discuss such findings in detail. But briefly summarizing the pertinent facts, it appeared that petitioner, a professional engineer and sales representative of machine tool manufacturers, in March 1951, entered into an agreement evidenced by certain correspondence with the Rehnberg company, a manufacturer of machine tools, to sell equipment manufactured by Rehnberg. Petitioner was to act as sales agent in the area of Cincinnati, Dayton, Springfield, and Columbus, Ohio, and a part of the State of Kentucky. He was to be compensated on a commission basis of 10 percent except that 5 percent was to be paid on orders growing out of quotations already submitted to the Automatic Transmission Division of Ford Motor

---

[1] "§ 1301. Compensation from an employment

"(a) Limitation on tax.—If an individual or partnership—

"(1) engages in an employment as defined in subsection (b); and

"(2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment); and

"(3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment,

then the tax attributable to any part of the compensation which is included in the gross income of any individual shall

not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income or such individual ratably over that part of the period which precedes the date of such receipt or accrual.

"(b) Definition of an employment.—For purposes of this section, the term 'an employment' means an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation therefor is obtained."

[2] Frank Stephen Ranz v. Commissioner of Internal Revenue, 31 T.C. 91.

Company. As a result of the petitioner's intensive promotional and sales efforts which continued through 1951 and 1952, Rehnberg received from Ford on various dates in 1953 a total of 13 orders aggregating $340,828.00 for machine tools for use in the manufacture of Ford's automatic transmission assemblies. All of these orders resulted from petitioner's efforts and proposals, and none was based upon the quotations or proposals already submitted to Ford at the time the agreement with petitioner was entered into. Deliveries on these orders were made in 1954 and during that year petitioner was paid commissions thereon in the said amount of $35,299.69. During the period 1952–1954 petitioner also obtained small orders from Ford for certain equipment not used in the manufacture of the Ford automatic transmission assemblies. In addition to the orders received from Ford, petitioner obtained small orders from other sources amounting to $1,254.-47 in 1952 and $2,422.18 in 1953. The agreement with petitioner was terminated November 15, 1956.

It is petitioner's insistence from these facts that he was employed by Rehnberg "to effect a particular result" within the meaning of subsection (b) in that his employment contemplated that he should obtain orders from Ford for machine tools required to manufacture its proposed automatic transmission assemblies to be used in Ford and Mercury automobiles. It is insisted that this is the only reasonable inference to be drawn from the terms of the agreement and

from the conduct of the parties pursuant to it. The agreement, however, appears to be free from ambiguity and contains no terms or provisions from which it could be concluded that it was the purpose of the parties to particularize its objects and purposes in the manner insisted upon by petitioner. On the contrary, from the terms of the agreement itself, it is clear that its purpose was to employ the petitioner as a general sales representative in his area with full freedom to solicit orders from any potential customer, including Ford. It was not an agreement to sell to Ford alone, in connection with its automatic transmission assembly project, or otherwise, and the conclusion of the Tax Court that the reference in the correspondence to Ford's Automatic Transmission Division was no more than a lead to a potential customer seems inescapable. The fact that Ford had a particular project of its own in developing an automatic transmission, or that petitioner's major efforts were concentrated in selling machine tools to Ford in connection with such project, cannot, of course, transform a general sales agreement, intended as such by the parties, into an arrangement to effect a particular result.

The term "an employment" was included in Section 1301 of the Code of 1954 for the purpose of clarifying and making more definite the words "compensation for personal services" which were a part of Section 107(a) of the Internal Revenue Code of 1939, 26 U.S.C. A. § 107(a).[3]

3. The Senate Committee on Finance commented as follows upon the term "an employment":

" * * * The existing law refers simply to 'compensation for personal services.' The new term 'an employment' is a more specific concept and, therefore, more accurately expresses the intended meaning. This aspect of the existing law has been a source of difficulty in determining the particular unit of personal services involved. In order to meet the 36-month requirement there is a tendency to combine various sets of services which in total extend over the required period. Likewise, there

is a similar tendency to separate various sets of services in order to meet the requirement that at least 80 per cent of the total compensation for all of the services be received or accrued in 1 taxable year. If a taxpayer has already received a substantial payment prior to the taxable year, he may attempt to segregate the prior payment to a different service rendered by him. In order to dispose of these difficulties, this section adopts the term 'an employment.' The general idea underlying the new term is that the compensation for which tax relief is provided under this section must relate to a par-

As pointed out by the Tax Court, the statute is one granting special tax relief and is to be given close scrutiny. Smart v. Commissioner, 2 Cir., 152 F.2d 333, 335. Cf. Slough v. Commissioner, 6 Cir., 147 F.2d 836, 839. The idea of a liberal construction was rejected by the Second Circuit in Smart v. Commissioner, supra, in a case involving Section 107 of the 1939 Code with its several amendments, the Court observing:

> "From all this it appears that we have to deal with a statute which not only has been amended, but amended with a precision which, it seems to us, should forbid any assumptions that it is infused with a broad purpose, which we should ramify as the occasion may demand." 152 F.2d at page 335.

It follows even more clearly that the statute in its present form is not to be extended by implication in view of its even greater precision, particularly the carefully drawn definition of the term "an employment."

In view of the legislative history of the statute, the clear terms of the statute itself, and its purpose to grant special relief in a narrowly limited class of cases, we are satisfied on the facts of the present case that the petitioner was not engaged in "an employment" within the meaning of subsection (b).

For these reasons, the decision of the Tax Court is affirmed.

ticular project on which the taxpayer worked, such as a particular law case, and not to a set of unrelated services which the taxpayer may have performed for the same person.

"The definition of 'an employment' is contained in subsection (b) of this section. There, the term is defined to mean an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation for such services is received. This definition will preclude a separation of services relating to a particular project, merely because the taxpayer may have received compensation for such services from different sources. Whether the period over which services are performed includes conference and study time depends upon the circumstances of the case. In general, if the compensation received specifically includes conference and study time, such time is a part of the total period over which the services were performed. The total period of an employment includes, of course, portions of the period during which the efforts of a taxpayer were unsuccessful in effecting the particular result." Senate Report No. 1622, 83rd Cong., 2d Sess., "Internal Revenue Code of 1954," pp. 445–446.