Ralph B. WATTLEY and Josephine R. Wattley, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 104, Docket 25801.

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1959.

Decided Feb. 16, 1960.

462

Ralph B. Wattley, pro se.

Arthur I. Gould, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before SWAN, MAGRUDER and LUMBARD, Circuit Judges.

MAGRUDER, Circuit Judge.

Nobody enjoys paying taxes. This is particularly true of a taxpayer who receives a large commission in a given year as the culmination of years of service and who is told to report the income as all having been received in that year, thus boosting him into the higher tax brackets.

To some extent the Congress was sympathetic to the above feeling, so that in enacting the Internal Revenue Code of 1939 it provided in § 107(a) as follows:

"§ 107. Compensation for services rendered for a period of thirty-six months or more and back pay.

"(a) Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

The Tax Court has held that the remedial provision of § 107(a) is inapplicable to the taxpayer's* situation. 31 T.C. 510.

We have here the familiar situation where the taxpayer acquired and operated for a time a one-man corporation. It suits the taxpayer's position and arguments here for us to "disregard the corporate entity" and to treat the transactions just as though they had been carried out by the taxpayer personally, not by him as agent for the wholly controlled corporation. The Tax Court said it could not do that.

Following is a summary of the relevant facts: Taxpayer individually was licensed in January, 1931, to act as a real estate broker in the State of New York. Within a month's time he acquired all the stock in an existing corporation and became president, treasurer, and a director, as well as the sole stockholder. He caused the old corporate name to be changed to R. B. Wattley Co. Inc. Thereafter, as long as the corporation remained in existence, he continued to hold these various positions in it. The corporation was formed for a business purpose, it being authorized, as stated in its certificate, to conduct a realty brokerage business. A broker's license was issued to it, and pursuant to such license the corporation delegated its broker's privilege to the taxpayer, who thereby was granted authority to act as real estate broker both for himself and on behalf of the corporation. Other brokers purported to act for R. B. Wattley Co. Inc. from time to time from 1931 to 1937, and they received from it, by way of compensation for their services, a percentage of each commission earned.

---

* We refer to Ralph B. Wattley as the taxpayer, though technically Wattley and his wife filed a joint return for 1951.

The corporation never paid an income tax, though returns were filed in its name. However, the taxpayer's individual returns between 1931 and 1943 declared income of $68,323.45 as having been received from the corporation in the form of salary, commissions, and compensation for personal services. Between the years 1944 and 1952 the corporate returns indicated that it was inactive, and the taxpayer's individual returns showed no income from the corporation during those years. In 1949 the corporation lost its license to act as a real estate broker. Finally, in 1958 it was dissolved by action of the Attorney General of the State of New York.

In 1931 the taxpayer began attempts to obtain a lease for certain property located on the southwest corner of Fifth Avenue and 43d Street (hereinafter referred to as the Fifth Avenue property) in the Borough of Manhattan in New York City. Taxpayer made numerous contacts with prospective lessees through 1940. Title to the property was acquired by the Mutual Life Insurance Company early in 1941. Thereupon taxpayer got in touch with that company and also with Manufacturers Trust Company in the hope of arranging a lease under which Manufacturers Trust Co. could erect a new bank building. In October, 1943, taxpayer was able to inform Mutual Life Insurance Co. that Manufacturers Trust Co. was willing to lease the property.

Up to this point all the contacts which the taxpayer made with Mutual Life Insurance Co. and Manufacturers Trust Co. were under the letterhead of R. B. Wattley Co. Inc. Taxpayer at no time gave any indication to Mutual Life Insurance Co. that he was not acting as the corporation's agent. However, in a letter to R. B. Wattley Co. Inc. in December, 1943, taxpayer stated that as of January 3, 1944, he would no longer perform services for the corporation as its broker representative. Later on we shall have more to say about this correspondence by the taxpayer, because in our view the Tax Court did not attach

sufficient importance to it in reaching the conclusion that the whole fee received by taxpayer in 1951 for the leasing of the Fifth Avenue property was paid to him as agent for the corporation. It does seem to be true, though the point has no present relevance, that Mutual Life Insurance Co. was not made aware of this change in the taxpayer's status, and supposed throughout that, in arranging a lease of the Fifth Avenue property, the taxpayer was acting solely as a brokerage representative of the corporation.

On April 10, 1944, Mutual Life Insurance Co. made an agreement, in form with the corporation, and with another broker who was concerned in the matter, as to the commissions that would be paid if a lease of the property was effectuated. One clause in this agreement stipulated that no commission would be due until all existing tenants on the property had been removed and the lessee had been put into possession. For one reason or another, in the years that followed the premises were not vacated and Manufacturers Trust Co. did not come into possession. Litigation between the landlord and prospective tenant ensued, and in fact in the latter part of 1949 taxpayer began to look for another possible lessee of the property. But this became unnecessary, for in July, 1950, Mutual Life Insurance Co. and Manufacturers Trust Co. buried the hatchet; remaining tenants got out, and in February, 1951, Manufacturers Trust Co. acquired possession as lessee. In the same month Mutual Life Insurance Co. made out a check in the sum of $30,666.-67 payable to R. B. Wattley Co. Inc. as the corporation's share in the commission. In accordance with the agreement which the corporation had made with the taxpayer, this check was endorsed and assigned to him individually.

Taxpayer claims that, rather than having to declare the entire $30,666.67 as income in 1951, he is entitled to prorate the amount received pursuant to § 107(a) of the Code over the period of nineteen years and nine months from 1931 to 1951 during which he was en-

deavoring to consummate a lease of the Fifth Avenue property. Disregarding the entity of the corporation for the moment, taxpayer argues that all of the $30,666.67 which he received in 1951 was in reality paid to him as an individual broker; that the other income of $68,323.46 which he reported in his individual returns for 1931 to 1943 represented commissions upon various transactions in which he acted individually as a broker; and that each commission constituted the total compensation for personal services, as that phrase is used in § 107(a).

The Tax Court found against the taxpayer, holding that the "total compensation" mentioned in § 107(a) includes all compensation which he may have received from the corporation during the nineteen or more years; that is to say, the $30,666.67 was, in the eyes of the Tax Court, a payment to the taxpayer by the corporation as compensation for acting as its representative in the Fifth Avenue transaction; and the $68,323.45 also paid to him as commissions on other transactions in which he represented the corporation had to be lumped together with the $30,666.67 to determine "the total compensation" under § 107(a), since all the various transactions carried out by the taxpayer as a broker representative of the corporation constituted, according to the Tax Court, one single personal service for the benefit of the corporation. In that view, the $30,-666.67 in question being less than eighty per cent of "the total compensation" earned on this one indivisible personal service to the corporation, § 107(a) was held not to apply.

If we were taking a fresh view of § 107(a), we would have difficulty in seeing what difference it makes whether the taxpayer was acting solely as a broker representative of the corporation or as an individual broker. Assuming that he was acting solely for the corporation, it is still true that the nature of his services necessarily contemplated alternative times of feast and famine. If the taxpayer had to nurse along the transaction involving the Fifth Avenue property for nineteen years until a lease was eventually consummated, on which a commission was paid, it is hard to see why other entirely separate transactions should be used by the Tax Court to defeat the application of § 107(a). It is a fact, which the government does not discuss in its brief, that though the present case is covered by § 107(a), this alleviating provision was revised somewhat in phraseology in § 1301 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1301. But it appears that the Congress did not suppose that it was changing the meaning of § 107(a) when it was enacting § 1301 in its present form. See H.R.Rep.No.1337, 83d Cong., 2d Sess. A289 (1954); S.Rep.No.1622, 83d Cong., 2d Sess. 445-46 (1954). See also 1 P-H 1959 Income Tax par. 7960; Frank Stephen Ranz, 1958, 31 T.C. 91, affirmed by the Court of Appeals, 6 Cir., 1960, 273 F.2d 810.

When the Treasury issued regulations governing the 1954 Code, it stated in example (4) of the U.S.Treas.Reg. § 1.1301-2(b) as follows:

"D entered into an agreement with Z Corporation to direct 5 motion picture productions for it in 5 years. Each of the 5 pictures was to be wholly unrelated to the others as entertainment products for public consumption. D's compensation for his services with respect to each picture was to be a certain percentage of the gross proceeds received from its showing. Each picture would normally be viewed by the motion picture industry as a distinct undertaking or project, and D's services in connection with each picture constitute a separate employment. * * * "

This illustration seems to be very much in point with the situation in the case at bar. It looks to us as though the illustration disregards what had theretofore been determined to be the decisive factor, namely, in what capacity the taxpayer was acting rather than the nature of the services he was rendering.

However, as Judge Learned Hand pointed out in Smart v. Commissioner, 2 Cir., 1945, 152 F.2d 333, 335, § 107(a) does grant special tax relief by way of an exemption and is consequently to be given "close scrutiny." Pursuant to this admonition, all the decided cases, so far as we have found, have held, in what may now be regarded perhaps as entrenched doctrine, that if a taxpayer is rendering services for another, even though on a commission basis and even though that may involve years when nothing is received because long periods of work have not culminated in any transaction, the general services to that other cannot be split up into separate transactions, but all the commissions paid to the taxpayer during the period must be lumped together in order to determine the "total compensation for personal services" within the meaning of the statute, and thus to decide whether the particular receipt constitutes at least eighty per cent of such total compensation. See J. Mackay Spears, 1946, 7 T.C. 1271; Harry Boverman, 1948, 10 T.C. 476; Reynolds v. Commissioner, 4 Cir., 1957, 249 F.2d 259; Ranz v. Commissioner, 6 Cir., 273 F.2d 810, again affirming the Tax Court, although § 1301 of the 1954 Code was here involved.

We do not go into the question whether this narrow interpretation of the statute, which seems to have been adopted without dissent, is the correct one or not, since the present taxpayer does not specifically ask us to intrude upon that apparently settled field. In his petition, the taxpayer hinges his claim for recovery upon the proposition that R. B. Wattley Co. Inc. was but a "token" corporation whose entity should be disregarded by us. We think it is clear that we cannot do that. Cf. Moline Properties, Inc. v. Commissioner, 1943, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L. Ed. 1499; National Carbide Corp. v. Commissioner, 1949, 336 U.S. 422, 428–429, 69 S.Ct. 726, 93 L.Ed. 779. The corporation was formed for a business purpose, and many activities were carried on in its name. Taxpayer has made his bed, and now has to lie in it.

But assuming that the taxpayer started his activities in 1931 in his capacity as a broker representing the corporation, nevertheless we believe that he was free to sever his connection with his wholly owned corporation, as apparently he did in January, 1944; and that thereafter whatever real estate brokerage work he performed was carried out in his capacity as an independent broker. In that capacity he was entitled to treat each client as separable, and the service rendered to each client as separable. Thus, on the Fifth Avenue deal the taxpayer might consider as his client either Mutual Life Insurance Co. or his own corporation; it would not matter which, because subsequent to 1943 there was no doubt that he received no income from either Mutual Life Insurance Co. or his own corporation other than the $30,666.-67 now in controversy. The record shows that on December 17, 1943, the taxpayer wrote a letter to R. B. Wattley Co. Inc. in which he notified the corporation that commencing January 3, 1944, he would engage in the real estate brokerage business on his own account. This letter contained the statement, which was applicable to the Fifth Avenue deal, to the effect that the taxpayer would be "entitled to the full amount of brokerage fees or commissions earned in any and all other pending brokerage negotiations, heretofore initiated through me in which I continue to participate and carry on * * * You are to assign and transfer to me any and all right to such commissions or fees * * * and shall turn over to me all sums received by you on account thereof." Furthermore, the letter stated that the aforesaid pending negotiations "shall be continued in your name as broker, but I have the option of re-instituting them in my name as broker" [which option was never exercised], and that the taxpayer has no further claims against the corporation "for my services as your representative in said real estate brokerage transactions." This letter was accepted by the corporation,

by a notation of its secretary thereon under date December 17, 1943, and at a special meeting of the board of directors held on the same date resolutions were adopted that the proposal of the taxpayer in his letter of December 17, 1943 be accepted and approved in all respects.

■ It is true enough that under the New York law, as between broker and client, a broker has earned his commission, once he brings the parties together, provided that a transaction eventuates out of their meeting. The broker need not take any further part in the negotiations. See Lloyd v. Matthews, 1872, 51 N.Y. 124; Sussdorff v. Schmidt, 1873, 55 N.Y. 319; Samuel Baum & Sons, Inc. v. Educational Alliance, Inc., 1958, 12 Misc.2d 270, 172 N.Y.S.2d 1015. Since, therefore, there was ultimately in 1951 a lease of the Fifth Avenue premises by Mutual Life Insurance Co. to Manufacturers Trust Co., it would follow that the broker's commission was earned merely because he was the procuring cause of the original meeting of the parties. But of course as a practical matter the taxpayer as broker would necessarily make further efforts to bring the parties to an agreement, for the execution of a lease was a condition precedent to the recovery of any commission. There is ample evidence in the record that the taxpayer devoted substantial efforts after January, 1944, to settling legal altercations between Mutual Life Insurance Co. and Manufacturers Trust Co. and in arranging a new lease after the initial transaction had been stalled. These personal services were designed to assure that the broker would receive a commission on the Fifth Avenue deal, and certainly in any realistic sense the final commission of $30,666.67 must have been regarded by the taxpayer as in part a compensation for such additional services.

But the Tax Court made no findings as to what part of the commission of $30,-666.67 was allocable to services which the taxpayer as broker performed subsequent to his resignation from the corporation as its broker representative.

Such findings will be necessary in order to permit the taxpayer to prorate the commission received in 1951 not over the whole period from 1931, as taxpayer has claimed, but only over the years from 1944 to 1951.

The decision of the Tax Court will be vacated and the case remanded to that Court for further proceedings not inconsistent with this opinion.

