**H. G. and Frances Kellam HENDRICKS, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 26158.**

United States Court of Appeals
Fifth Circuit.

Jan. 20, 1969.

Rehearing Denied March 17, 1969.

Henry G. Hendricks, pro se.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Ann E. Belanger, Elmer J. Kelsey, attys'. Dept. of Justice, Washington, D. C., Lester R. Uretz, Chief Counsel, IRS, Washington, D. C., for respondent.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, Judge.

PER CURIAM:

This appeal attacks the soundness of a memorandum decision of the Tax Court. Finding ourselves in accord with the Tax Court's decision, we append the Tax Court's memorandum opinion.[1]

Affirmed.

## MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, Judge:

Respondent determined deficiencies in petitioners' income tax in the amounts and years as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 93029 | 1957 | $12,432.85 |
| 1848–62 | 1958 | 5,319.44 |
| 650–63 | 1959 | 193.44 |
| 650–63 | 1960 | 606.10 |
| 1624–66 | 1961 | 1,401.66 |
| 1624–66 | 1962 | 1,360.70 |
| 1624–66 | 1963 | 1,427.46 |

The sole issue for decision [1] is whether the relief provisions of section 1301 of the Internal Revenue Code of 1954 apply to the net amount of $16,666.67 received by petitioner H. G. Hendricks in 1958 in settlement of a civil law suit brought by him against the Crane sisters.

## FINDINGS OF FACT

H. G. Hendricks (hereinafter referred to as Hendricks) and Frances Kellam Hendricks filed Federal joint income

1. The Commissioner determined deficiencies in federal income taxes for each of the years 1957 through 1963, but the only taxable year in issue is 1958 because pursuant to the parties' joint motion our Court dismissed the taxpayers' petition for review with respect to the taxable years 1957 and 1959 through 1963, leaving only the taxable year 1958 to be considered by this Court on review.

1. All of the other issues presented by the pleadings have been disposed of by waiver on the part of petitioners or agreement of the parties.

tax returns for each of the taxable years 1957 to 1963, inclusive, with the district director of internal revenue, Austin, Texas. Petitioners were legal residents of San Antonio, Texas, when each of the four petitions in the cases involved herein was filed with the Tax Court.

In the summer of 1932 Hendricks began giving oral securities investment advice to two sisters, Esther Crane of Baltimore, Maryland, and Catherine Elizabeth Crane of Washington, D. C. (hereinafter referred to collectively as the Crane sisters). In the early period of their relationship petitioner discussed with the sisters their securities investments, gave them oral advice, and occasionally gave their broker orders to execute. After approximately one year of operating in the above fashion the Crane sisters opened a trading account in their names with a broker. They paid $10,000 into the aforesaid trading account and gave Henderson a power of attorney to act for them in the handling of the account. Thereafter, Hendricks still discussed his proposed investment activity with regard to their trading account with the Crane sisters. By 1937 or 1938 Hendricks was managing the account entirely on his own initiative.

In 1955 the Crane sisters transferred their trading account to a different broker and terminated Hendricks as manager of the account. Just prior to the termination of the relationship between Hendricks and the Crane sisters in 1955, Hendricks suggested to them a division of the assets in the trading account. Prior to that time he had never sought any compensation from the sisters. Shortly prior to 1955 the trading account had a fair market value of approximately $350,-000.

In 1955 Hendricks brought legal action against the Crane sisters claiming that he was entitled to one-half of the earnings and gains accumulated in the trading account since its inception. Hendricks contended in the lawsuit that a verbal agreement entered into in 1932 between the Crane sisters and himself gave him the right to one-half of all gains, including dividends, arising from his management of the trading account. In the suit the Crane sisters denied any such agreement and contended that they owed nothing to Hendricks. The litigation was terminated in February 1958 by agreement of the parties with Hendricks being paid $25,000. He netted $16,666.67 after paying attorney's fees of $8,333.33.

In their amended joint income tax return for the year 1958, petitioners failed to include in the computation of taxable income any of the amount received in settlement of Hendricks' civil action against the Crane sisters. However, on Schedule SE (Form 1040), "U.S. Report of Self-Employment Income," attached to their amended return for 1958, petitioners reported that Hendricks had total earnings from self-employment in the amount of $16,666.67.[2] Exhibit A attached to petitioners' aforesaid amended return, which exhibit is styled "Supplementary Memorandum" states:

> H. G. Hendricks, re Hendricks v. Crane, et al., Civil Action No. 2972–56, District of Columbia, February, 1958, received in settlement the sum of $16,-666.67 in fulfillment of his claim for part of earnings in venture in which other parties held the funds and paid all due taxes. Copy of statement of counsel covering the arrangement is enclosed.

### H. G. HENDRICKS.

The Crane sisters paid the Federal income taxes on gains and earnings in the trading account and paid taxes on the dividends received throughout the period involved.

In his notice of deficiency for the taxable year 1958, respondent claimed that the net amount of $16,666.67 received by Hendricks in that year from the settlement of the civil action styled Hendricks

---

2. The sum of $16,666.67 shown on petitioners' return appears to be a mathematical inaccuracy. The sum of $16,666.67 is the correct amount remaining from the $25,-000 settlement after payment of attorney's fees of $8,333.33.

v. Crane, et al., is taxable as ordinary income for the year 1958.

## OPINION

Petitioners argue on brief that (1) Hendricks' arrangement with the Crane sisters constituted a joint venture and not an employer-employee relationship; (2) the Crane sisters received all the earnings of the alleged joint venture as "custodians"; and (3) they would hold "in trust" Hendricks' share of the earnings (an amount which he alleges to be not less than $75,000) until distribution, for which no date was set. On the basis of petitioners' characterization of Hendricks' arrangement with the Crane sisters as a joint venture, they claim herein that they are entitled to a loss between the amount of his alleged portion of the trading account assets and the $25,000 which Hendricks received on settlement of the civil action. Petitioners made no argument during the trial proceedings herein or on brief that no amount of tax is owing on the ground that the Crane sisters paid all tax on the trading account's income, as they claimed on their return.

We do not agree with petitioners' characterization of Hendricks' arrangement with the Crane sisters as a joint venture. There is nothing in the record to suggest that a joint venture was intended even if all the facts regarding the arrangement are as petitioners assert. All income tax on earnings and gains from the trading account were paid by the Crane sisters during the period 1932 through 1955. Apparently Hendricks never reported as taxable income any portion of the earnings or gains arising from the Crane securities. The fact that the Crane sisters reported all earnings and gains arising from the securities managed by Hendricks and he reported none, affirmatively indicates that no joint venture was contemplated. By reporting all earnings and gains, the Crane sisters believed that such income from the trading account was theirs alone. The transcript (pp. 1–93) of the civil action

brought by Hendricks against the Crane sisters was not introduced into evidence but was nevertheless submitted by petitioners with their brief. Although intended by petitioners to support their position herein, the transcript contains several admissions by Hendricks on direct examination that he considered his arrangement with the Crane sisters to be compensatory in nature. We believe that Hendricks never had a right to any portion of the earnings and gains from the sisters. At all times said earnings and gains were the property of the Crane sisters even though they would have been personally subject to any legally binding compensatory agreement which they might have had with Hendricks. We conclude, therefore, Hendricks never had a proprietary interest in the assets of the trading account. His arrangement with the Crane sisters was strictly compensatory. Consequently, there is no merit to petitioners' contention that they suffered a loss of property by receiving only $25,000 on settlement of the civil action because, as a joint venturer, Hendricks allegedly owned a share of the assets in the trading account in an amount not less than $75,000 and he only received $25,000. It is well settled that a taxpayer is not allowed to reduce ordinary income actually received by the amount of income he failed to receive. Hort v. Commissioner of Internal Revenue, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941); Palmer Hutcheson, 17 T.C. 14 (1951).

Since we have found that petitioners are not entitled to a proprietary loss or compensatory loss, we reach the issue as to whether petitioners are entitled to spread the net amount of the settlement, $16,666.67, over the years 1932 through 1955 under the provisions of section 1301, which section provides as follows:

SEC. 1301. COMPENSATION FROM AN EMPLOYMENT.

(a) Limitation On Tax.—If an individual or partnership—

(1) engages in an employment as defined in subsection (b); and

(2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment); and

(3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment, then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

(b) Definition of an Employment.—For purposes of this section the term "an employment" means an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation therefor is obtained.

Although the purpose of section 1301 and its predecessors was to grant relief from tax hardships otherwise resulting from the bunching of income received for personal services rendered over a long period of time, "[the section] is to be given 'close scrutiny' and is not entitled to a liberal interpretation." Breen v. Commissioner of Internal Revenue, 328 F.2d 58 (C.A. 8, 1964), affirming a memorandum Opinion of this Court, certiorari denied 379 U.S. 823, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964).

There is no question here about the satisfaction of the 36 month and 80 percent requirements of the statute (see subsections 1301(a) (2) and (a) (3), respectively). Nor does respondent deny that the amount in question was received for personal services rendered by petitioner. The question presented is the narrow one of whether Hendricks' personal services for which he received $25,000 qualify as "an employment  *  *

to effect a particular result." Breen v. Commissioner of Internal Revenue, supra at 62; Frank Stephen Ranz, 31 T.C. 91, 98 (1958), affd. 273 F.2d 810 (C.A. 6, 1960). Section 1301(b) defines the term "an employment" as an arrangement for the performance of personal services "to effect a particular result."

Consideration of Frank Stephen Ranz, supra, and Maurice J. Breen, T.C. Memo. 1962-230, affd. 328 F.2d 58 (C.A. 8, 1964), certiorari denied, 379 U.S. 823, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964), is relevant at this juncture.

The Ranz case involved the question of whether commissions received by the taxpayer in 1954 while engaged as a sales agent are eligible for spread-back treatment under section 1301. The taxpayer's contract of employment in Ranz provided that he was to sell all equipment manufactured by his principal. In holding that the taxpayer had not received an amount for "an employment," we noted:

The congressional reports state that the general idea underlying the new term "employment" is that the compensation for which tax relief is provided must relate to "a particular project" on which the taxpayer worked, and not to a set of unrelated services which the taxpayer may have performed for the same person.  *  * [31 T.C. at 99]

In affirming our decision in Ranz the Sixth Circuit observed:

[The taxpayer's contract of employment]  *  *  *  contains no terms or provisions from which it could be concluded that it was the purpose of the parties to particularize its objects and purposes in the manner insisted upon by petitioner. On the contrary  *  * it is clear that its purpose was to employ the petitioner as a general sales representative in his areas  *  * [273 F.2d at 812]

The factual pattern presented in the Breen case is closely related to that presented in the instant case. There the question raised was whether section 1301

could be applied to the sum of $4,200 received by the taxpayer from the corporation by which he was employed both as president and director. The taxpayer contended that the $4,200 payment was made by the corporation for services which he performed for the corporation as president and director during 21 years of its corporate existence. Respondent argued that if the taxpayer received the $4,200 payment for the rendition of such services, section 1301 would not apply since the taxpayer's services do not come within the definition of "an employment" within the meaning of section 1301.

In determining whether or not section 1301 applied to the payment in Breen, we noted:

> In his regulations the Commissioner has, we think, correctly pointed out that "an arrangement to perform general services is not an employment within the meaning of section 1301 either as to any particular project on which services are performed or as to the general services since there is no understanding that the services are to accomplish a particular result." Section 1.1301–2(b), Income Tax Regs. The question of whether "an employment" within the meaning of the statute exists is one of fact and the Commissioner's regulation states that "[t]he primary factor in making such a determination is what the particular profession, business, or industry would normally consider as a distinct project or result." Section 1.1301–2(b)(ii), Income Tax Regs.

In holding that the $4,200 failed to come within section 1301 and was therefore fully taxable in the year of receipt, we stated:

> Would engagement to secure as president and director of an operating corporation be normally considered by business or industry as engagement in a distinct project to effect a particular result as distinguished from

general employment to render general services for the corporation? We think not. * * * We find nothing in the record to indicate petitioner was engaged to render, or that he performed, services for the corporation beyond the normal duties of president and director of an operating company. * * * The $4,200 was paid to petitioner for services that were performed in prior years but this statute is not applicable when the employment was general and not designed to effect a particular result. * * *

We believe that Hendricks rendered to the Crane sisters security investment services of a general nature just as the taxpayers in Ranz and Breen rendered general services to their employers. Hendricks' investment services performed for the Crane sisters do not appear to have been directed toward effectuating any particular project or result. Petitioners have not shown contrawise. There is nothing in the record to suggest that Hendricks rendered any services beyond the normal duties of an investment counselor. We do not think that general investment services would normally be considered as a distinct project in the investment business. See Maurice J. Breen, supra.

On the basis of the foregoing we hold that section 1301 is inapplicable to the $16,666.67 received by Hendricks in 1958 and, consequently, the entire amount is taxable to petitioners as ordinary income received in the calendar year 1958.

Petitioners conceded certain issues and stipulated thereto during the trial proceedings herein. On brief, however, they raise such issues once again. This petitioners cannot do. They must accede to their previous concessions. However, even if we were to herein pass on such conceded issues at this point, we note that they would be resolved unfavorably to petitioners.

Decisions will be entered under Rule 50.