MELVIN D. and RUTH R. HOUSTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Houston v. Commissioner
Docket No. 9762-82.
United States Tax Court
T.C. Memo 1983-635; 1983 Tax Ct. Memo LEXIS 151; 47 T.C.M. (CCH) 83; T.C.M. (RIA) 83635; October 13, 1983. Ruth R. Houston, pro se. Cheryl M. D. Rees, for respondent. COHEN
MEMORANDUM FINDINGS OF FACT *152 AND OPINION COHEN, Judge: Respondent determined a deficiency in the amount of $3,664.60 in petitioners' Federal income tax for the taxable year 1978. The deficiency resulted from disallowance of business losses claimed by petitioners, disallowance of certain claimed employee business expenses and itemized deductions, and disallowance of a residential energy credit and part of a child care credit. Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by reference. Objections to various of the exhibits to the stipulation are sustained for reasons discussed below, and the balance of the exhibits are incorporated herein by this reference. FINDINGS OF FACT Petitioners Melvin D. and Ruth R. Houston are husband and wife and resided in Woodville, Texas, at the time they filed their petition herein. They filed joint Federal Individual Income Tax Returns for the taxable years 1978 and 1979 and an amended Federal Individual Income Tax Return for the taxable year 1978. On the amended return, petitioners attempted to carry back net operating losses shown on the 1979 return and attributed to a purported partnership known as Lake Livingston Washateria/Lake *153 Livingston Taxicab and to a Subchapter S corporation known as Lake Livingston Realty, Inc. (Realty). A $5,000 loss reported on petitioners' 1978 return was also attributed to Realty. The only other items of income reported by petitioners on their returns were wages earned by Mr. Houston as a high school teacher and coach, wages earned by Mrs. Houston as a music teacher, and a small amount of interest income received by them in 1979. At the time of trial, petitioners claimed that they were also entitled to carry over to 1978 a net operating loss from 1977. On or about January 4, 1979, a Form 2553, Election by a Small Business Corporation, was filed on behalf of Realty. The form was signed by Elijah W. Ratcliff, Executive-Secretary of the corporation, and dated December 30, 1978. The form listed four shareholders of the corporation, viz., Larry Warmsley, Elijah W. Ratcliff, Martin L. Ratcliff, and Ruth R. Houston. It was not signed by Mr. Warmsley or by the spouse of any person listed as a shareholder. The form stated that the corporation first had shareholders or assets and began doing business on November 9, 1978. A Form 1120S, U.S. Small Business Corporation Income Tax *154 Return, was filed on behalf of Realty for the year 1978. The return was signed by Elijah W. Ratcliff, Executive-Secretary, and dated January 19, 1979. Attached to that return were four Schedules K-1, Shareholder's Share of Undistributed Taxable Income, one for each of the four persons listed as shareholders on the Form 2553. That return claimed an ordinary loss of $20,000 from "Realty Associated With Judgment, 11th Jud. Dist., Harris County, Texas," "acquired 11/6/1978" and "sold 12/31/78." A Form 1120S was filed for Realty for the calendar year 1979. Attached to that return were five Schedules K-1, identifying as shareholders John D. and Clara A. Wiley, Carolyn J. Grant, Melvin D. and Ruth R. Houston, Elijah W. Ratcliff, and Martin L. Ratcliff. That return claimed a loss of $200,056.37, of which $200,000 was shown as loss of "Dunbar Taxi Service," "acquired 12/9/78" and "sold 10/15/79." OPINION The only evidence offered by petitioners at trial was testimony of Elijah W. Ratcliff and exhibits consisting of copies of documents filed in various court proceedings. Respondent objected to the exhibits and much of this testimony on the grounds of relevance and hearsay. The Court *155 reserved ruling on the exhibits until such time as petitioners' case was concluded so as to give petitioners every opportunity to tie the exhibits to some material point and to overcome the hearsay objections. Petitioners have not done so, and the objections are sustained. [1]
Mr. Ratcliff's testimony was extremely vague and confusing. He presented no convincing proof that any deductible loss was sustained by petitioners or by any entity in which petitioners had an interest. It is apparent, however, that the losses claimed by Realty and allegedly passed through to petitioners as shareholders of Realty were derived from the failure of Realty to achieve anticipated profits or to perfect title to property in which Realty had some unspecified interest or claimed inchoate *156 rights. Such losses, if they were established, would not be deductible by Realty or by petitioners. "It is well settled that a taxpayer is not allowed to reduce ordinary income actually received by the amount of income he failed to receive." Hendricks v. Commissioner,406 F.2d 269, 272 (5th Cir. 1969), affg. a Memorandum Opinion of this Court; Escofil v. Commissioner,464 F.2d 358 (3d Cir. 1972), affg. a Memorandum Opinion of this Court; see Hutcheson v. Commissioner,17 T.C. 14 (1951). [2] The same principles apply to the partnership losses claimed to have been suffered by petitioners. *157 Thus, it not necessary to discuss in detail the numerous other reasons why petitioners have not established that they are entitled to any of the losses claimed. To be complete, however, we note that we agree with respondent that (1) the purported Subchapter S election filed by Realty was invalid because (a) it was untimely (section 1372(c)), [3] and (b) it was not signed by all of the shareholders (section 1.1372-2. Income Tax Regs.); (2) petitioners failed to prove their pro rata share of the losses allegedly sustained by Realty; (3) petitioners failed to prove that they had any basis in Realty; and (4) petitioners failed to prove that they had any interest in a partnership. Similarly, petitioners have not presented any evidence of net operating losses available for carryback from 1979 or carryover from 1977. See Naegle v. Commissioner,T.C. Memo. 1965-212, affd. per curiam 378 F.2d 397 (9th Cir. 1967). *158 In their petition and in their brief, petitioners claim that they are entitled to deductions disallowed by respondent for truck and auto expenses, disability insurance premiums paid, the cost of flowers worn by Mrs. Houston at charitable functions, post office box rental expense, the cost of magazine subscriptions, fees for children's school activities, payments for musical equipment used at home, and the cost of laundering, telephone, and boat insurance premiums. By their very nature, these items would normally be personal and nondeductible. Section 262. Deductions are a matter of legislative grace, and petitioners must prove their entitlement to them. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a). Although petitioners claim that the items are deductible under either section 162 or 212, neither petitioner testified at trial or otherwise presented any evidence connecting the expenditures claimed to a business or income-producing activity that would justify deduction of those items. Thus, there is a total failure of proof as to the deductibility of these items, and respondent's determination disallowing the deductions must be sustained. See *159 Rule 149(b). In any event, the disability insurance premiums are nondeductible as a matter of law. Blaess v. Commissioner, 28 T.C. 710 (1957); see section 1.212-1(a), Income Tax Regs.
Petitioners also claimed deductions for taxes and interest paid and charitable contributions made in excess of those allowed by respondent. Although such items, if substantiated, are ordinarily deductible, petitioners again presented no evidence that they incurred deductible expenses in excess of those allowed by respondent. Thus, petitioners have failed to met their burden of proof, and they cannot be allowed the disputed deductions. Rule 142(a). With respect to medical expenses disallowed by respondent, the disallowance is required by section 213, which limits those expenses to a percentage of adjusted gross income. In computing petitioners' allowable child care credit, respondent disallowed amounts paid for school lunches purchased by petitioners' children. This adjustment is courrect as a matter of law. Payments specifically attributable to items such as food are not employment related expenses for care of a child and do not qualify toward the credit provided by section 44A. *160 Section 1.44A-1(c)(3)(i), Income Tax Regs.
Petitioners claimed a residential energy credit for the taxable year 1978 based upon their estimation of the cost of insulation and caulking on a residence completed in early 1978.Petitioners offered no evidence that their dwelling unit was substantially completed prior to April 20, 1977, a prerequisite for allowance of the residential energy credit for qualified energy conservation expenditures set forth in section 44C(c)(1). [4] Respondent's disallowance of the credit obviously must be sustained. Decision will be entered for the respondent.
Footnotes
1. The exhibits to which objections are sustained are petitioners' exhibits 7, 9, 10, 11, and 12, described in paragraphs 19, 23, 24, 25, and 28 of the stipulation. Because respondent's exhibits E, F, G, H, and I, described in paragraphs 20, 21, 26, 27, and 29, were offered only to complete the record in the event that petitioners' said exhibits were admitted, those exhibits are deemed withdrawn by respondent.↩
2. Similar claims, involving one of the same entities, were rejected in Ratcliff v. Commissioner,T.C. Memo. 1980-12. See also Ratcliff v. Commissioner,T.C. Memo. 1983-635. The Court takes judicial notice of the case of Houston v. Commissioner,↩ docket No. 17742-81, in which similar losses were claimed by these petitioners for the year 1977; said case was dismissed by an Order and Decision entered September 29, 1982, which granted respondent's motion to dismiss for lack of prosecution and sustained a deficiency of $1,440.
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
4. (c) Definitions and Special Rules.--For purposes of this section-- (1) Energy Conservation Expenditures.--The term "energy conservation expenditure" means an expenditure made on or after April 20, 1977, by the taxpayer for insulation or any other energy-conserving component (or for the original installation of such insulation or other component) installed in or on a dwelling unit-- (A) which is located in the United States, (B) which is used by the taxpayer as his principal residence, and (C) the construction of which was substantially completed before April 20, 1977.↩