Jack D. Webb v. Commissioner.
Webb v. Commissioner
Docket No. 2857-68.
United States Tax Court
T.C. Memo 1971-81; 1971 Tax Ct. Memo LEXIS 251; 30 T.C.M. (CCH) 329; T.C.M. (RIA) 71081; April 22, 1971, Filed. Jack D. Webb, pro se, 757 36th Ave., San Francisco, Calif.Joel A. Sharon, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1963 in the amount of $1,209.28. [1]
*252 Since respondent has conceded one of the issues raised by the pleadings, the only issues for decision are: (1) Whether an amount of $14,500 received by petitioner in 1963 from Air Reduction Co., Inc., in return for a general release of that corporation from any claim which petitioner had against the company is ordinary community income of petitioner and his wife. (2) If the $14,500 constitutes ordinary income, is petitioner entitled to spread that income equally over the years 1961 through 1964? Findings of Fact Most of the facts have been stipulated and are found accordingly. Petitioner who resided in San Francisco, California at the time the petition in this case was filed, filed a separate individual income tax return for the calendar year 1963 with the district director of internal revenue at San Francisco, California. During the year 1963 petitioner was married to Clara Webb. Clara also filed a separate individual income tax return for the calendar year 1963. During the year 1963 petitioner and his wife, Clara, lived in San Francisco, California. On November 3, 1960, petitioner entered into a contract with Federal Industries, a division of Textron, Inc., which *253 provided that he was to be the sole European sales representative for that corporation. The contract was to extend through June 30, 1961. Petitioner was to receive as compensation that portion of his sales proceeds of items sold by him which exceeded the listed price of the goods sold. In other words, if the price of certain material was $2 per yard and petitioner sold it for $2.10 per yeard, he would receive 10 cents per yard on the sale. The contract provided that petitioner was to pay all his own travel and selling expenses. The products which petitioner was to introduce into the European market were a type of plastic vinyl leather known as "Super Kepetron" and 330 "Fedswade" which products were manufactured by Federal Industries. By letter dated February 21, 1961, petitioner was advised by the executive vice president of Federal Industries that the letter would serve to extend the present agreement between petitioner and Federal Industries and the supplementary agreement thereto for an additional 2 years pursuant to petitioners' request. By letter dated January 10, 1962, petitioner was advised by the president of Federal Industries that his "present contract runs to June 30, 1962 and *254 this is the authority to extend the agreement for 5 more years to June 30, 1967." Prior to May 2, 1962, Air Reduction Co., Inc., acquired the business and certain assets of Federal Industries from Textron, Inc. On May 11, 1962, the president of Airco International, a division of Air Reduction Co., Inc., wrote a letter to petitioner stating that Air Reduction Co., Inc., had acquired the business assets of Federal Industries which until such acquisition was a subsidiary of Textron Industries and that Air Reduction Co., Inc., proposed to continue Federal Industries without change in personnel or facilities as an operating division of Air Reduction Co., Inc. The letter referred to the "exclusive commission arrangement which at the time of the acquisition existed between" petitioner and Federal Industries and "which is set forth in correspondence" between petitioner and Federal Industries. The letter further stated "If acceptable to you, we are willing to confirm, honor and continue the arrangement embodied in such correspondence until the expiration date which is now set at June 30, 1967, on the understanding that at our mutual convenience we shall prepare and execute an agreement, *255 which agreement, however, will not alter any arrangement embodied in the aforesaid correspondence." The letter requested petitioner to indicate his approval by signing and returning a copy of the letter. Petitioner did sign a copy of the letter under the words, "accepted and confirmed." Under date of March 21, 1963, petitioner addressed a letter to Airco Company International which opened with the statement "Your unwarranted conduct is extremely condemnable." The letter referred to petitioner's letters of November 26, 1962, January 21, 1963, and February 28, 1963, being ignored. This letter referred to the company's not having taken the necessary action to fulfill promises to reduce price levels to be competitive, to reduce delivery time of orders, to provide customers with sufficient samples, and to develop new materials. It further referred to the fact that petitioner had invested a large amount of money and 2 years of strenuous work in the arrangement of being sole sales representative in western Europe of Federal Industries. Under date of April 3, 1963, petitioner received a letter from the president of Airco International referring to petitioner's letter of March 21, 1963, and *256 advising petitioner that John W. F. Young who had received a copy of the letter would be in California shortly after April 15 and would visit with petitioner to discuss the subject matter of petitioner's March 21, 1963 letter. On May 7, 1963, petitioner received a letter on stationary of Air Reduction Co., Inc., from R.V. Giordano advising petitioner that he had met with the president of Airco Company International and John Young in his capacity as legal representative of Airco International. The letter stated that John Young had described his conversation with petitioner concerning petitioner's relationship with Airco Company International and had made certain recommendations. The letter further stated that the writer would be in San Francisco on May 27, and would further discuss the matter with petitioner. On May 28, 1963, Air Reduction, Inc., paid petitioner $14,500 in return for a general release of all claims against it. Petitioner considered this payment to be partly as compensation for expenses he had paid and partly "for the sudden termination" of his contract with Air Reduction Co., Inc. Petitioner acted as sole European sales representative for Federal Industries and *257 Air Reduction Co., Inc., from November 3, 1960 to May 28, 1963. After May 28, 1963, petitioner performed no further services as European sales representative for either Federal Industries or Air Reduction Co., Inc., and received no further commissions or payments from either company. As a result of the cancellation of his contract with Air Reduction Co., Inc., on May 28, 1963, petitioner began seeking other methods of self-employment to support himself and he traveled to Europe to establish contacts and create business. 331 Petitioner and his wife, Clara, filed joint Federal income tax returns for each of the calendar years 1958 through 1962 and for the calendar year 1964. The following schedule shows the income as reported on these returns for the years indicated: 1958
1959
1960
1961
1962
Salary received by Clara
$3,638.52
$3,605.48
$3,830.81
$ 916.56
$2,462.31
Business (Schedule C) profit or (loss) of petitioner
[1] (321.18)
[1] (255.00)
[1] (1,304.39)
[1] (6,977.76)
[1] (549.57)
Adjusted gross income reported
2,583.02
3,350.48
2,687.88
(6,061.20)
[2]
*258 For the year 1960 the joint return showed that petitioner had no receipts from his business as an import representative and the loss shown from this business consisted of expenses listed on schedule C. For the year 1961, the loss shown on schedule C was arrived at by deducting from commissions received from Federal Industries of $2,994.23, expenses of $9,971.99. In 1962 the net loss reported on schedule C was arrived at by deducting from commissions received from Air Reduction Co., Inc. and Textron, Inc. in the amount of $5,452.96 expenses of $6,002.53. Petitioner on his separate income tax return for the calendar year 1963 reported an adjusted gross income of $887.40. In explanation of this computation he attached to his return a schedule in which he stated that he was under a 4-year contract with Air Reduction Co., Inc., which called for him to pay all of his own expenses and in return he received a commission on all sales, that he began traveling and promoting the product in western Europe in 1961, and that Air Reduction Co., Inc., terminated his contract in the year 1962 and "in lieu of the lost commissions, time and travel expenses, settled with me for the sum of $14,500.00 *259 allowatable [sic] to the entire term of the contract." Petitioner then showed the following computation and allocation of the $14,500 which he stated he was doing under sections 1301-1307, I.R.C. 1954: 1961
1962
1963
1964
Allocation of settlement
$3,625.00
$3,625.00
$3,625.00
$3,625.00
Wages (Per return) - Wife
916.56
2,462.31
Other income: Commissions
2,994.23
5,452.96
1,046.62
Interest
92.94
Dividends
27.50
Capital Gain & Loss
139.14
(1,000.00)
Total Income
7,535.79
11,679.41
3,792.06
Less Business Expense 9,971.99
6,002.53
2,904.66
Adjusted Gross Income
(2,436.20)
5,676.88
887.40
Loss Carryover 2,436.20
2,436.20
3,240.68
887.40
Tax Due
341.00
40.00
Tax Paid or Withheld 109.15
303.62 (109.15)
37.38
40.00
Refund for year 1961 of 109.15 Received.
Tax Due for 1962
$ 37.38
Tax Due for 1963
40.00
Refund for 62 Prev Rec 303.62
Balance Due
$381.00
For the calendar year 1964 petitioner and Clara in their joint return reported income received by Clara of $1,427.74 and a loss on petitioner's business as shown on schedule C, which was arrived at by subtracting *260 from the $3,625 which petitioner had allocated to 1964 from the $14,500 he received from Air Reduction Co., Inc., in 1963 expenses of $5,739.22, leaving a net loss of $2,114.22 from petitioner's business. 332 Respondent in his notice of deficiency increased petitioner's income for 1963 as reported on his return by adding thereto $6,210.60 of community income computed as follows: Your wife's salary
$ 2,681.87
Your income:
(1) Contract termination settlement
$14,500.00
Commissions
$1,046.62
Less: Business expenses
(2,904.66)
(1,858.04)
Interest
92.94
Dividends
27.50
Capital losses (1,275.77)
11,486.63
Total income as adjusted
$14,168.50
Less: Separate dividend income 27.50
Total community income as adjusted
$14,141.00
Your community one-half share
7,070.50
Add: Your separate dividend income 27.50
Your income as corrected
$ 7,098.00
Income reported 887.40
Increase
$ 6,210.60
In computing petitioner's tax liability respondent reduced petitioner's income as determined by him by one-half of a community net operating loss carryback which he determined to be a carryback from the year *261 1964, the primary adjustment which was made in determining the carryback being an elimination of the $3,625 which petitioner had reported in 1964 as a portion of the $14,500 allocable to the year 1964. Respondent explained his adjustments by stating that he had determined that the $14,500 received by petitioner from Air Reduction Co., Inc., in 1963 in settlement of a contractual claim for wages constituted taxable income and had further determined that this sum did not qualify for the treatment provided by section 1301 of the Internal Revenue Code as it applied to years ending prior to January 1, 1964, since the employment was less than 36 months and the total sum received in 1963 was less than 80 percent of the total sum received from the employment in 1963 and prior years. Opinion In his petition petitioner stated that it was his contention that the $14,500 should be distributed over the 4-year period of the contract under sections 1301-1307, I.R.C. 1954. [2] However, at the trial and on brief petitioner's major contention was that he realized no profit from the entire contract and therefore realized no income from the receipt of the $14,500. Petitioner *262 states that over the period from November 1960 through May 1963 he received total commissions from Federal Industries and Air Reduction Co., Inc., of $23,993.81 and had total expenses of $25,941.84 resulting in a loss from the entire transaction and therefore should be subject to no tax with respect to the receipt of the $14,500. He states that one of the reasons that the payment to him of the $14,500 was made was because of the expenses he had incurred and another reason was to compensate him for the loss of commissions. Petitioner's argument ignores the requirement of the revenue laws that income be computed on a yearly basis. We have set forth in our findings in some detail the income as reported by petitioner and his wife, Clara, from 1958 through 1962. This computation shows that in fact in every year except 1961, petitioner in computing his income tax received the full benefit of his losses from his business of representing Federal Industries and Air Reduction Co., Inc., as a reduction of other income reported on the joint returns he filed with his wife. For the year 1961 petitioner and his wife showed a net *263 loss of a little over $6,000 on their joint Federal income tax return. This loss would apparently properly have been a carryback to 1958, 1959, and 1960 under the provisions of section 172 which provide that a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss. This section further provides (section 172 (b)(2) that the net operating loss for any taxable year shall be carried to the earliest 333 of the taxable years to which it may be carried. There is nothing in the record to show whether petitioner made any claim for refund of taxes paid in 1958, 1959, and 1960 by claiming a net operating loss carryback. However, the indication from the record is that he did not since in fact he carried a little over $2,000 of the 1961 loss over as a loss carryover to 1962 and insofar as this record shows respondent never disallowed the claimed loss carryover to that year. In actual fact all of petitioner's losses up through the year 1962 have been used to offset income for income tax purposes except approximately $4,000 of the 1961 loss, and under the tax laws petitioner *264 would have been permitted to use this loss to obtain refunds of taxes paid for 1958, 1959, and if any portion of the loss remained for 1960. In any event, petitioner is not entitled to treat his entire contract with Federal Industries as a whole as distinguished from computing his income or loss from compensation received under that contract on a yearly basis in accordance with the requirements of the Internal Revenue Code. In his brief petitioner still contends that if he is taxable to any extent on the $14,500, it should be spread over the 4-year period 1961 through 1964. Petitioner never explains how he determined that 1964 should be included in the years over which the income should be spread. Petitioner in his argument is apparently relying on the provisions of sections 1301 through 1305 as enacted by section 232(a) of Pub. L. 88-272 (Feb. 26, 1964), which amended the provisions of Code sections 1301 through 1307, which amendments were made applicable to taxable years beginning after December 31, 1963. However, the taxable year here involved is the calendar year 1963 and the provisions of section 1301 through 1307 in effect prior to the February 26, 1964, amendments are applicable *265 to petitioner's receipt of the $14,500. Sections 1301 through 1306, [3] as applicable to the years here involved provide for 334 recomputation of tax under certain limited circumstances on the basis of attributing a portion of the amounts received in a taxable year to certain prior years. Section 1301 provides that if an individual engages in an employment for the performance of personal services which covers a period of 36 months or more and the gross compensation from the employment received in the taxable year of the individual is not less than 80 percent of the total compensation from such employment, then the tax attributable to any part of the compensation which is includable in the gross income of the individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt. It is questionable whether petitioner's $14,500 should be considered income from employment within the meaning of section 1301. See Frank Stephen Ranz, 31 T.C. 91 (1958), aff'd 273 F. 2d 881 (C.A. 6, 1960). Apparently respondent *266 has conceded that he incorrectly determined the deficiency in self-employment tax on the basis that in his opinion the $14,500 was not income from employment. However, even if the $14,500 were to be considered income from employment, it clearly does not fall within section 1301 since petitioner's employment by Federal Industries and Air Reduction Co., Inc., covered a period of only 19 months and not a period of 36 months and also the $15,546.62 received in 1963 (petitioner's 1963 commissions of $1,046.62 plus the $14,500) was less than 80 percent of the total amount received by petitioner under his contract from Federal Industries and Air Reduction Co., Inc., during the years 1960 through 1963. *267 Section 1302 concerns income from an invention or artistic work and is obviously inapplicable to the $14,500 received by petitioner. Section 1303 provides that if the amount of back pay received by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in the gross income for the taxable years to which such portions are respectively attributable. This section defines back pay as remuneration, including wages, salary, retirement pay, and other similar compensation, which is received or accrued during the taxable year by employees for services performed before the taxable year which would have been paid before the taxable year, except for the intervention of (1) bankruptcy or receivership of the employer, (2) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings, (3) lack of funds by the United *268 States, a State, a Territory, or any political subdivision thereof, to make the payments, or (4) any other event determined to be similar in nature to the specifically listed events. This section also defines back pay to include certain retroactive wages or salary increases ordered by any Federal or State agency, or payments received as a result of an alleged violation by an employer of any State or Federal law relating to labor standards or practices or termination payments under the Peace Corps Act. The last three categories obviously would not apply to the $14,500 paid to petitioner and in our view the $14,500 is not included in the first category. It is clear that if the $14,500 is to be included in the first category of section 1303 it would have to be because it was remuneration received for services performed by petitioner before the taxable year for Federal Industries or Air Reduction Co., Inc. which would have been paid to him before the taxable year except for the intervention of some event similar to the bankruptcy or receivership of the employer, a dispute as to the liability of the employer to make the payment which is determined by a Court proceedings, or the lack of *269 funds of a governmental agency to make the payment. The evidence here is clear that the $14,500 was not an amount which would have been paid to petitioner for services rendered before the year 1963 except for the intervention of any of the listed events or any other event. For the years 1960 through 1962 petitioner had received all payments to which he was entitled under his contract with Federal Industries and Air Reduction Co., Inc. Therefore the $14,500 was not back pay within the definition of the statute. Petitioner apparently argues that since the amount was in part to compensate him for expenses of these prior years it was in fact for services performed in these prior years. While we do not agree with this contention of petitioner, even if he were right in this portion of his contention, the payment was clearly not for services for 335 which Federal Industries or Air Reduction Co., Inc., would have paid him except for the intervention of some event. His contract with these companies provided for him to pay his own expenses. Therefore so long as that contract was in effect, the companies would have paid none of petitioner's expenses. Section 1304 involves compensatory *270 damages for patent infringement and is obviously not applicable to the $14,500 payment here involved. Section 1305 provides that if an amount representing damages is received by a taxpayer during a taxable year as a result of an award in a civil action for breach of contract, then the tax attributable to the inclusion in gross income for the taxable year of that part of such amount which would have been received or accrued by the taxpayer in a prior taxable year but for the breach of contract, shall not be greater than the aggregate of the increases in taxes which would have resulted had such part been included in gross income for such prior taxable year or years. The $14,500 received by petitioner in 1963 was not as a result of an award in a civil action for the breach of a contract but was the result of a settlement. Also, no portion of the $14,500 would have been received by petitioner in a prior taxable year if his contract with Air Reduction Co., Inc., had not been breached, assuming that the contract was breached by Air Reduction Co., Inc. Section 1306 deals with damages for injuries under the antitrust laws and is obviously inapplicable to the $14,500 here in issue. Section *271 1307 merely deals with rules applicable to the determination to be made under sections 1301 through 1306. We, therefore, conclude that the law with respect to allocations of income under certain limited circumstances to prior years in computing the tax of a particular year, as applicable to the calendar year 1963, does not include any provision which would permit the $14,500 received by petitioner in 1963 to be spread over other years for the purpose of computing his taxable income for 1963. Although petitioner contends that a part of the $14,500 was to reimburse him for expenses, he apparently does not contend that for this reason it did not constitute income in 1963. In any event, since petitioner's expenses have been incurred and deducted by him in prior years, he would not be entitled to deduct a reimbursement for such expenses in 1963. Also, petitioner at no point showed what portion, if any, of the $14,500 was intended as reimbursement of expenses. If the amount so intended were less than his 1963 expenses, then petitioner has obtained the benefit of the deduction for the expenses for which he was reimbursed in the very year of reimbursement. We sustain respondent's determination *272 with respect to the inclusion of the $14,500 in the community income of petitioner and his wife for the calendar year 1963. [4]
Since respondent has conceded the issue with respect to self-employment tax. Decision will be entered under Rule 50. Footnotes
1. The deficiency of $1,209.28 is a statutory deficiency resulting from the difference in petitioner's income tax liability as reported on his tax return of $40 and the $990.08 deficiency in income tax, plus the $259.20 deficiency in selfemployment tax determined by respondent in the notice of deficiency. Respondent has now conceded that the self-employment tax is not due. The record is not clear as to the deficiency in payment based on respondent's determination.↩
1. The losses for 1958 and 1959 were as a sales representative for manufacturers other than Federal Industries. The losses for 1960 through 1962 were from petitioner's representation of Federal Industries and Air Reduction Co., Inc. ↩
2. The return showed a loss carryover from 1961 of $6,610.57 of which $2,051.88 was applied to offset the income reported from Clara's salary plus an amount of $139.14 shown as gain from the sale or exchange of property.↩
2. All references are to the Internal Revenue Code of 1954.↩
3. SEC. 1301. COMPENSATION FROM AN EMPLOYMENT. (a) Limitation on Tax. - If an individual or partnership - (1) engages in an employment as defined in subsection (b); and (2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment); and (3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment, then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual. (b) Definition of an Employment. - For purposes of this section, the term "an employment" means an arrangement or series of arrangements for the performance of personal services by an individual or partnership to effect a particular result, regardless of the number of sources from which compensation therefor is obtained. * * * SEC. 1303. INCOME FROM BACK PAY. (a) Limitation on Tax. - If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate. (b) Definition of Back Pay. - For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following - (1) Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which would have been paid before the taxable year except for the intervention of one of the following events: (A) bankruptcy or receivership of the employer (B) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (C) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (D) any other event determined to be similar in nature under regulations prescribed by the Secretary or his delegate. * * * SEC. 1305. BREACH OF CONTRACT DAMAGES. (a) General Rule. - If an amount representing damages is received or accrued by a taypayer during a taxable year as a result of an award in a civil action for breach of contract or breach of a fiduciary duty or relationship, then the tax attributable to the inclusion in gross income for the taxable year of that part of such amount which would have been received or accrued by the taxpayer in a prior taxable year or years but for the breach of contract, or breach of a fiduciary duty or relationship shall not be greater than the aggregate of the increases in taxes which would have resulted had such part been included in gross income for such prior taxable year or years. * * *↩
4. Petitioner's wife, Clara Webb, has a case pending in this Court similar to petitioner's. She was ill at the time of the trial of petitioner's case and therefore her case was continued.↩